THE UNION CENTRAL LIFE INSURANCE COMPANY, *a corporation*, v. EDWARD R. CHAMPLIN AND GRACE A. STAPLES.

(Filed July 6, 1901.)

CONTRACT—When Void. Any stipulation, agreement or contract which forbids the debtor from discharging his obligation by borrowing money in whole or in part, except from the creditor, is subversive of the rights of the citizen, injurious to the general welfare of the public, and is therefore void on the high ground of public policy Hence, the provision or stipulation contained in the note sued on in this action to the effect that the right of the maker to make payment at any time is waived providing the money tendered is borrowed in whole or in part elsewhere, is contrary to public policy and is, therefore, void.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*J. C. Strang* and *Chas. H. Wood,* for plaintiff in error.

*Dale & Bierer,* for defendants in error.

STATEMENT OF FACTS.

This was an action brought by Edward R. Champlin and Grace A Staples against the Union Central life insurance company, a corporation, to release and discharge a certain note and real estate mortgage upon a certain tract of land in Logan county, Oklahoma, and to quiet the title thereto. On March 14, 1898, one Oscar R. Champlin conveyed by warranty deed a certain tract of land situated in Logan county to Edward R. Champlin and Grace A. Staples, defendants in error, plaintiffs in the court below. It appears from this deed that

the defendants in error assumed and agreed to pay a certain note executed by said Oscar R. Champlin to the Union Central life insurance company, plaintiff in error, and defendant in the court below, on the first day of March 1898, a copy of which is as follows:

"$350.00.     GUTHRIE, OKLAHOMA TERRITORY, March 1, 1898.

"Ten years after date, for value received, we promise to pay to the order of the Union Central life insurance company of Cincinnati, O., Three hundred and fifty and no-100, ($350.00,) dollars at the home office of said company in Cincinnati, Ohio, with interest at the rate of ten per centum per annum, from date until maturity, and twelve per centum per annum after maturity, until paid, payable annually on November first of each year, excepting the last installment, which shall be due and payable with the principal.

"If this note is sent to Guthrie National Bank, at Guthrie, Oklahoma territory, or to any other bank for collection, we agree to pay exchange and collection expenses, and this note shall not be deemed paid until the funds are actually transmitted to and received by payee.

"Interest coupons are hereto attached representing the interest from date of maturity, which with the principal note are secured by a mortgage deed of even date herewith. If any installments of interest is not paid at maturity, this principal note and all interest due thereon shall become due and payable at once, at the option of the holder of this note, notice of such option being hereby waived.

"This note is executed upon the condition that partial payments in any amount at any time, after one year, will be received at the home office of said company, in Cincinnati, Ohio, and that the interest will be rebated from the date of such payments, provided each matured interest note has been

paid on or before maturity. This condition is waived, provided the maker's total indebtedness is not being reduced, or providing the money tendered is borrowed in whole or in part elsewhere.

" Post Office address:

"OSCAR R. CHAMPLIN."

To secure the payment of the said note the said Oscar R. Champlin executed to the Union Central life insurance company a certain real estate mortgage upon the land subsequently deeded to the defendants in error. On July 24, 1899, the defendants in error made a tender of the full amount due on the note and mortgage, together with the interest which had accrued from date to that time, to the plaintiff in error, which tender the said plaintiff in error refused to accept unless the defendants in error made an affidavit that the money which was tendered for such payment had not been borrowed in whole or in part elsewhere, which affidavit the defendants in error refused to make. This action was then brought to have said mortgage released and discharged of record, and defendants in error tendered in court the full amount of the indebtedness. To the petition of the plaintiff the defendant demurred on the ground that the petition did not state facts sufficient to constitute a cause of action. The court overruled the demurrer to the petition, and the defendant having elected to stand upon said demurrer, declined to plead further, and judgment was entered in favor of the plaintiffs. From this judgment the defendant appeals.

Opinion of the court by

HAINER, J.: The only question involved in this case is the validity of that provision of the note which provides that the right to make payment of said note at any time is

waived if the money tendered is borrowed, in whole or in part, elsewhere. It is contended by the appellant that this provision in the note is a valid and binding agreement in the mortgage, and that the court erred in holding said agreement to be void for being contrary to public policy.

The record in this case shows that the debtor tendered to the creditor the full amount of the principal and interest that was due upon his obligation, and the sole objection made by the creditor for not receiving the amount tendered, was because the debtor had refused to make an affidavit that he did not borrow the money, in whole or in part, elsewhere. We think it is clear that the creditor has no right to impose such a condition upon the debtor. It is sufficient if the debtor tendered the amount of money that was due. It is true that a creditor has a right to stipulate in a contract any particular kind of money to discharge an indebtedness, for instance as gold coin of a certain weight and fineness; but he has no power to stipulate the source from whence the money is obtained to discharge the debt. It could not affect the rights of the creditor if the debtor borrowed the money elsewhere, unless it was intended by the creditor to compel the debtor to borrow from the creditor in the event he desired to discharge the debt. To uphold such an agreement would be equivalent to holding that the debtor must borrow from the creditor and not elsewhere, if he desires to discharge the indebtedness before the loan matures.

Mr. Story in his work on Conflict of Laws, section 546, after reviewing the authorities, deduces the following rule:

"Public policy is in its nature so uncertain and fluctuating, varying with the habits and fashions of the day, with the

growth of commerce and the usages of trade, that it is difficult to determine its limits with any degree of exactness. It has never been defined by the courts, but has been left loose and free from definition in the same manner as fraud. This rule may, however, be safely laid down, that whenever any contract conflicts with the morals of the time, and controvenes any established interest of society, it is void, as being against public policy."

Mr. Greenhood in his work on Public Policy, says:

"By public policy is intended that principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public, or against the public good, which may be termed the policy of the law, or public policy in relation to the administration of the law. The strength of every contract lies in the power of the promisee to appeal to the courts of public justice for redress for its violation. The administration of justice is maintained at public expense; the courts will never, therefore, recognize any transaction which, in its object, operation or tendency, is calculated to be prejudicial to the public welfare."

In volume 15, page 934, American and English Encyclopaedia of Law, (second edition), the rule is thus stated:

"Where a contract belongs to a class which is reprobated by public policy, it will be declared illegal, though in that particular instance no actual injury may have resulted to the public, as the test is the evil tendency of the contract and not its actual result."

The principle deducible from the authorities is that any stipulation, agreement or contract which forbids the debtor from discharging his obligation by borrowing money, in whole or in part, except from the creditor, is subversive of the

rights of the individual, injurious to the public at large, and is therefore void on the high ground of public policy. We therefore hold that the stipulation in the note sued on in this action which forbids the maker from discharging his obligation by tendering to the payee money which was borrowed, in whole or in part, elsewhere, is in clear contravention of public policy and is therefore null and void.

For the reason herein stated the judgment of the district court is affirmed, at the cost of the plaintiff in error.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.