CAROLINE J. ROBINSON *v.* LORRIN A. THURSTON AND JOHN D. PARIS, EXECUTORS UNDER THE WILL OF ELIZA ROY, DECEASED.

No. 993.

Error to Circuit Court, First Circuit.

Hon. C. W. Ashford, Judge.

Argued April 30, 1917.                    Decided June 15, 1917.

Robertson, C.J., Quarles and Coke, JJ.

Contract—*release on conditions subsequent.*

The release of an existing debt upon conditions subsequent merely suspends the right of action thereon until such time, if ever, the event contemplated occurs. The release will be avoided if the conditions are not complied with.

SAME—*illegal contract not to be enforced by court.*

A party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. Courts of justice will never recognize or uphold any transaction which in its object, operation or tendency is calculated to be prejudicial to the public welfare.

SAME—*void as against public policy.*

The state has a general interest in the freedom of its people in the exercise of their legal and normal rights and any contract that is subversive of those rights without any benefit to the restrainor is against public policy.

SAME—*same.*

A contract which attempts to restrain another from incurring indebtedness in the sum of one thousand dollars and upwards without limit as to time or place, without benefit to the covenantee, is an unreasonable restraint of trade and void because against public policy.

PLEADING—*rule of court.*

A rule of court requiring a defendant to give notice that the defense of illegality will be relied upon does not apply where the illegality appears upon the face of the plaintiff's complaint.

OPINION OF THE COURT BY COKE, J.

(Robertson, C.J., dissenting.)

The defendants are the executors of the will of Eliza Roy, deceased, who died on or about August 29, 1912. The plaintiff is a daughter of Eliza Roy. On November 27, 1905, and for a long time prior thereto, Eliza Roy was indebted on three separate promissory notes which were at that date owned and held by plaintiff. The total amount of indebtedness on these several obligations amounted, in principal and interest, to $14,490.83, the greater part of which was accumulated interest. On that date the plaintiff and Eliza Roy entered into an agreement respecting said indebtedness, in which agreement Eliza Roy acknowledged the indebtedness

of $14,490.83 as due from her to the plaintiff Caroline J. Robinson, and the said Caroline J. Robinson, in consideration of the sum of ten dollars and in further consideration of the covenants and agreements of Eliza Roy set forth in the agreement, acknowledged full payment and settlement of the indebtedness upon the proviso that if Eliza Roy should at any time thereafter mortgage or sell any of her real estate or incur indebtedness amounting at any one time to the sum of one thousand dollars and upwards, without the consent in writing of Caroline J. Robinson, then and in such case the acknowledgment of payment of said indebtedness, and the release and cancelation and discharge of said notes would be null and void and of no effect, and the said indebtedness would thereby become immediately due and payable. As this case turns entirely upon the agreement made between Eliza Roy and plaintiff the same is set forth in full as follows, to wit:

"This agreement made this twenty-seventh day of November by and between Caroline J. Robinson of Honolulu, Territory of Hawaii, and Mrs. Eliza Roy, widow of W. F. Roy of Kona, Island of Hawaii, Witnesseth:

"Whereas the said Eliza Roy is indebted to the said Caroline J. Robinson in the following sums:—" (Here the notes are separately listed and described).

"Total amount of principal and interest as of November 23, 1905      $14,490.83.

"And Whereas the said Caroline J. Robinson has agreed to cancel and release the said indebtedness and the said notes and mortgages and to release the said Eliza Roy from said indebtedness and all claims under said notes and mortgages on the terms and conditions hereinafter contained; and the said Eliza Roy has agreed to said terms and conditions;

"Now therefore in consideration of the premises and of the sum of Ten Dollars ($10) to the said Caroline J. Robinson paid by the said Eliza Roy, the receipt whereof by the said Caroline J. Robinson is hereby acknowledged and

in further consideration of the covenants and agreements of the said Eliza Roy hereinafter contained the said Caroline J. Robinson doth hereby acknowledge full payment and settlement of said indebtedness, principal and interest, hereinabove set forth and doth hereby release. the same and cancel and discharge the said notes and mortgages;

"Provided however that.if the said Eliza Roy shall at any time hereafter mortgage or sell any of her real estate or shall incur indebtedness amounting at any one time to the sum of One Thousand Dollars ($1,000) and upwards without the consent in writing of the said Caroline J. Robinson, then and in any such case this acknowledgment of payment of said indebtedness and said release and cancellation and discharge of said notes and mortgages shall be null and void and of no effect and said enumerated indebtedness and interest thereon shall immediately become due and payable by the said Eliza Roy, her heirs, executors, administrators and assigns to the said Caroline J. Robinson, her heirs, executors, administrators and assigns with interest thereon at the several rates aforesaid, in the same manner as though this acknowledgment of payment and release of said notes and mortgages had not been made.

"The said Eliza Roy in consideration of the foregoing agreements on the part of said Eliza Roy, for herself, her heirs, executors, administrators and assigns doth hereby covenant and agree with the said Caroline J. Robinson, her heirs, executors, administrators and assigns that she will not, without the approval in writing of the said Caroline J. Robinson, sell or mortgage any of her lands or incur any indebtedness in excess, at any one time, of the sum of One Thousand Dollars ($1,000).

"And the said Eliza Roy doth hereby acknowledge that the said enumerated indebtedness and interest thereon as hereinabove set forth are now due and payable to the said Caroline J. Robinson and doth hereby agree that in case of the violation by her of her said above agreement and covenant, or any part thereof, then and in such case the said indebtedness, principal and interest shall be and become immediately due and payable to the said Caroline J. Robinson, her heirs, executors, administrators and assigns, in the same

manner as though this acknowledgment of payment and release had not been made.

"In Witness Whereof the said parties hereto have hereunto set their hands and seals the day and year first above written.

"Caroline J. Robinson

her

"Witness                    "Eliza Roy          X

"L. A. Thurston                              mark"

It is conceded that this agreement was executed November 27, 1905.

After the death of Eliza Roy the plaintiff duly presented to the defendants, as executors aforesaid, her claim under and in respect of said promissory notes, demanding payment thereof. This claim having been rejected by defendants plaintiff commenced her action in the circuit court for recovery of said claim, alleging in her complaint, in substance, that said notes had become due to plaintiff by reason of the fact that after the execution of the agreement of November 27, 1905, and prior to her death, "said Eliza Roy did sell and convey certain portions of her real estate without the consent of the said plaintiff, and did, without the consent of plaintiff, incur indebtedness amounting in the aggregate at one time to more than one thousand dollars."

The defendants answered denying generally all of the allegations of the complaint and gave notice that among other defenses they intended to rely upon the defense of payment, statute of frauds and the statute of limitations. Shortly thereafter defendants filed an amended answer admitting some of the allegations of the complaint and generally denying the allegations not so admitted, and further setting up as a defense that all of plaintiff's claims against Eliza Roy were fully paid and settled by the agreement dated November 27, 1905, and that all of said claims were barred by the statute of limitations. Upon the issues thus formed the

cause went to trial before the circuit court of the first circuit without a jury, the right to a trial by jury having been waived by both parties. At the conclusion of the case the trial court rendered a decision in which it found as a fact that Eliza Roy, prior to her death and after the execution of said agreement of November 27, 1905, did incur indebtedness at one time to an aggregate amount of more than one thousand dollars.

The trial court held, however, that under the provisions of said agreement the claims of plaintiff were totally released and discharged; that the clause in said agreement which acknowledged full payment and satisfaction of the indebtedness 'and released, canceled and discharged the notes, constituted a complete liquidation thereof; that the same became utterly and absolutely extinguished and could have no further existence as a legal obligation. The trial court adopted the law as expressed in the case of *Tyson* v. *Dorr*, 6 Whart. (Pa.) 255, and gave judgment in favor of defendants and plaintiff comes here on a writ of error.

The plaintiff abandoned her claim that Eliza Roy violated the provisions of the agreement against the alienation of her property without the written consent of the plaintiff and now relies solely upon the alleged violation of that part of the agreement which prohibited Mrs. Roy from incurring indebtedness at any one time in the sum of one thousand dollars or upwards without the written consent of plaintiff. Thus the issues are narrowed down to a consideration of this single clause in the agreement. The trial court having found that Mrs. Roy, subsequent to the date of the agreement and prior to her death, did incur indebtedness at one time in the sum of one thousand dollars and upwards, we are unwilling to disturb this conclusion, although the evidence was, to say the least, not overly strong. It appears from the evidence that after Mrs. Roy's death various debts which she is alleged to have incurred while living were

brought to light, amounting in all to the sum of $1386.45. The greater portion of this indebtedness was made up of a telephone bill which amounted to $768. This bill had been paid by her son-in-law in instalments from time to time and had been running for more than ten years. The son-in-law testified that he never intended to present the bill and that the same was first mentioned while Mrs. Roy was on her deathbed, at which time, it is claimed, she acknowledged the bill and directed that it be paid by her representative. The weakness of the evidence respecting this alleged indebtedness was, perhaps, in a large measure cured by admissions of counsel for defendants made during the trial.

The record now before us discloses that the first note herein referred to was dated in 1884, the second in 1886 and the third in 1895. The last payment made on any of said notes was in the year 1889. The principal of said notes amounts to the sum of $5875 and the interest now claimed amounts to $12,707. From these facts the statute of limitations would appear to have run against the several obligations long prior to the execution of the agreement between Mrs. Roy and the plaintiff in 1905. There may have been promises to pay or other acts on the part of Mrs. Roy which would have revived the obligations prior to the making of said agreement. Upon this subject the record is entirely silent.

We disagree with the decision of the trial court holding that the effect of the agreement was a complete release and discharge of the indebtedness and that "a man cannot release a personal action as an obligation with a condition subsequent, but the condition will be void, for a personal action once suspended is extinguished forever." The ancient case of *Tyson* v. *Dorr,* supra, cited in support of this doctrine, has long since been discarded and the modern rule is that a release of an existing debt with conditions subsequent

merely suspends the right of action thereon until such time, if ever, the event contemplated occurs.

"A release may also be subject to a condition subsequent; and in that case the release will be avoided if the condition is not complied with." 2 Addison on Contracts, Pt. 2, p. 836.

"It is not and never was, true that in no mode and under no circumstances can a personal action be suspended." *Belshaw* v. *Bush,* 11 C. B. 201.

"There are also cases in the books where a contract having been broken, and a cause of action having accrued thereon, a new contract between the debtor and creditor and additional parties, creating new rights and liabilities, has been made and accepted as a conditional accord and satisfaction and discharge of the cause of action, so that if the new contract is carried out by the new parties in all its integrity, the original cause of action is extinguished and gone forever; and if it is not fully carried out the party is remitted to his original right of action upon the original contract." 2 Addison on Contracts, Pt. 2, p. 838. See also *Newington* v. *Levy,* 6 L. R. C. P. 180.

"We * * * think it would be most unjust for a debtor to be allowed to take advantage of a release only granted on a condition he has not performed." *Hall* v. *Levy,* 10 L. R. C. P. 154.

There is another phase of this case which, while almost wholly ignored in the court below and in the briefs and argument of counsel before this court, demands consideration, and that is the question of the validity of the clause in the agreement between Eliza Roy and plaintiff herein restraining Eliza Roy from incurring indebtedness at any one time to the amount of one thousand dollars or upwards without the written consent of plaintiff. Under other circumstances we might feel constrained to ignore all questions not properly urged for our consideration by counsel. But in this case the agreement is before us and plaintiff can only prevail upon its strength and validity. If we find that the condition in the agreement, for the violation of which plaintiff must depend solely for judgment in this case, is

for any reason void, we conceive it to be our duty to so declare.

"No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim." 9 Cyc. 546. See also *Pocahontas Coke Co.* v. *Powhatan Coal & Coke Co.*, 56 S. E. 264.

"Under the principles relating to the doctrine of public policy, as applied to the law of contracts, courts of justice will never recognize or uphold any transaction which in its object, operation or tendency is calculated to be prejudicial to the public welfare." 6 R. C. L. 712.

"Whether a contract is against public policy is a question of law for the court." 9 Cyc. 483.

The clause in the agreement hereinabove set out attempted to restrain Eliza Roy from incurring indebtedness at any one time in the sum of one thousand dollars or upwards without plaintiff's written consent. This restraint is without bounds or limit either as to place or duration. At no time during her life and at no place and under no circumstances could Eliza Roy incur the indebtedness unless with the consent of plaintiff without committing a breach of the condition in the agreement. Occasions might arise where it would be of great advantage to Mrs. Roy and to her estate for her to exercise the right to incur indebtedness in the amount mentioned. An emergency might occur during her lifetime, caused by sickness or otherwise, whereby her self-preservation would demand the exercise of this right. And on the other hand, wherein lay the benefit to plaintiff by reason of this extraordinary and unusual restraint upon the legal rights of Mrs. Roy, to wit, the right to trade upon her credit? It might be said that plaintiff, being a daughter of Mrs. Roy, would, in the event she died intestate, become one of the heirs of her estate and that for this reason she had an interest in the conservation of her

mother's property. We deem this consideration altogether too remote. Mrs. Roy might have made a will prior to her death devising her property to her other children or even to strangers, in which event the plaintiff would have no interest in the property of which her mother died possessed. See *Kalanianaole* v. *Liliuokalani, ante* 457, 472. Then how could plaintiff suffer by the breach of the contract? As a matter of fact Mrs. Roy might, by the exercise of her right to incur indebtedness, have greatly enhanced the value of her estate.

Ch. J. Parker, in *Mitchel* v. *Reynolds*, 1 P. Wms. 181, said: "A particular restraint is not good without a just reason and consideration."

"The * * * question is, whether this is a reasonable restraint of trade. And we do not see how a better test can be applied to the question whether reasonable or not, than by considering whether the restraint is such only as to afford a fair protection to the interests of the party *in favour of whom it is given,* and not so large as to interfere with the interests of the public. *Whatever restraint is larger than the necessary protection of the party, can be of no benefit to either,* it can only be oppressive; and if oppressive, it is, in the eye of the law, unreasonable. Whatever is injurious to the interests of the public is void, on the grounds of public policy." *Horner* v. *Graves*, 131 Eng. Rep. 287; 6 R. C. L. p. 789.

The growth of commerce and the usages of trade demand the free exercise of the right to extend credit and to have credit extended; to enjoy the right to borrow as well as the right to lend; and unless there appears some clear and positive benefit to accrue to the covenantee by reason of the subversion of these rights a contract to that effect will be held an unreasonable restraint of trade and void because against public policy.

"Every restraint of trade which is larger than what is required for the necessary protection of the party with whom the contract is made is unreasonable and void, as injurious

to the interests of the public on the ground of public policy." *Mallan* v. *May,* 11 Mee. & W. 653. See also 63 Am. Dec. 384.

The state has a general interest in the freedom of its people in the exercise of their legal and natural rights and any contract that tends to curtail those rights without any benefit to the restrainor is against public policy. The right to borrow has been recognized for ages. The commerce of the world is conducted largely on credit, and while the disposition to incur indebtedness may in some instances prove harmful, yet the right to borrow is universally recognized as a valuable privilege often indulged, and not infrequently to the great benefit and advantage of the borrower. It is not an over-statement to say that countless firms and individuals, and even nations, are constantly being saved from financial wreck and disaster by timely recourse to this privilege.

"If an agreement binds the parties or either of them, or if the consideration is, to do something opposed to the public policy of the state or nation, it is illegal and absolutely void, however solemnly made. If a court should enforce such agreements it would employ its functions in undoing what it was created to do." 9 Cyc. 481.

"Any stipulation, agreement or contract which forbids the debtor from discharging his obligation by borrowing the money, in whole or in part, except from the creditor, is subversive of the rights of the citizen, injurious to the general welfare of the public and is therefore void on the high ground of public policy." *Union Cent. Life Ins. Co.* v. *Champlin,* 65 Pac. 836.

While the facts of the case just cited are entirely dissimilar to those of the case at bar, yet the principles of law therein enunciated have application here.

We are of the opinion that the clause in the agreement referred to, which attempted to restrain Eliza Roy from incurring indebtedness to the amount at any one time of one

thousand dollars or over without the consent of plaintiff herein, constituted an abnegation of her legal rights, without benefit to plaintiff, was an unreasonable restraint of trade and is therefore void on the ground of public policy. It follows that, the condition being void, an action based upon a breach thereof could not be maintained. The reasons advanced by the trial court for its decision in favor of the defendants were erroneous, but the conclusions are correct and will therefore not be disturbed. *Notley* v. *Notley, ante* p. 724.

The judgment of the circuit court is affirmed.

*C. H. Olson* and *M. B. Henshaw* (*Holmes & Olson* with them on the brief) for plaintiff in error.

*Andrews & Pittman* for defendants in error.

### CONCURRING OPINION OF QUARLES, J.

I concur in the conclusion and reasoning of the opinion written by Mr. Justice Coke. The theory of the plaintiff as set forth in her complaint is that the notes sued on and the mortgages securing them were released by the agreement of November 27, 1905, such release subject to defeasance upon the happening of either of two conditions subsequent, viz., the alienation of any of her real estate or the incurring of indebtedness to the extent of one thousand dollars at any one time by Mrs. Roy without the written consent of the plaintiff. The plaintiff relies upon the happening of the last condition subsequent as defeating the release and reviving her cause of action upon the notes sued on here. The agreement is pleaded by plaintiff in effect and copies attached to and made a part of plaintiff's complaint, and the questions upon which the decision here rests are raised in and appear upon the face of the complaint. If the agreement as to the conditions subsequent is not valid and binding, but, on the other hand, is void for the reason

that such conditions subsequent are contrary to public policy the complaint shows no cause of action and it is not necessary to plead their illegality or to give notice thereof. The rule of the circuit court requiring notice that the defense of illegality will be relied on was not intended to apply to such defense when it appears upon the face of the complaint. The plaintiff must plead a valid and legal contract. The conditions of defeasance being contrary to public policy and void, and so shown upon the face of the complaint, no question of evidence is involved, the only question being, is the plaintiff entitled to judgment upon her own showing? The trial court held that she was not on the ground that the notes sued on were released by said agreement. The conclusion of the trial court was correct. To hold otherwise would be equivalent to holding that plaintiff is entitled to judgment by reason of a contract against public policy, thereby giving the consent of the court to the enforcement of such contract. In my opinion the court cannot do so and the judgment appealed from should be affirmed.

### DISSENTING OPINION OF ROBERTSON, C.J.

I concur in the ruling made that the circuit court erred in holding that the plaintiff could not recover because, as supposed, a release of a personal obligation upon condition subsequent must as matter of law operate as an absolute release. But I must dissent from the further ruling that the judgment should be affirmed on the ground that the condition subsequent was against public policy and void, and that the release, therefore, was an absolute one. Rule 4 of the rules of the circuit court of the first circuit provides that "no defendant shall be allowed to set up" certain defenses, including the defense of illegality, "unless he shall,

on filing his answer, give notice within his answer or at the foot thereof, of his intention to rely upon the same." The point that the contract is illegal was not raised in the trial court by demurrer, answer or otherwise, nor have the appellees urged it in this court. But it is said that the condition of the release is in and of itself contrary to public policy, and that it is the duty of this court upon its own motion to decline to enforce it. The principal opinion seems to concede, however, that if the provision as to incurring indebtedness in excess of $1000 was a "benefit" to the plaintiff, or if she might "suffer by the breach" of the contract, or if it was a "reasonable restraint," or if the restraint was not "larger than what was required for the necessary protection" of the obligee, it would not render the condition invalid. Yet, by affirming the judgment of the circuit court, this court precludes the plaintiff from the opportunity of showing, if she could, that the restraint was reasonable, or that the condition was a benefit to her and that she would suffer by its breach. She is practically denied her day in court on that matter. The case of *Notley* v. *Notley*, cited in the principal opinion, was an equity appeal, the entire case was before this court upon the facts as well as the law, and the conclusion of this court was based upon evidence contained in the record. This case seems to be decided upon a lack of evidence upon a point which was not agitated in the trial court.

I think the agreement in question is not illegal upon its face because of the condition referred to. Public policy is more concerned with the enforcement of private contracts than it is with defeating them. The supreme court of the United States in *B. & O. R. Co.* v. *Voigt,* 176 U. S. 498, 505, said, "At the same time it must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce

contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare." In *Printing, etc., Co.* v. *Sampson,* L. R. 19 Eq. 462, 465, Sir George Jessel, M. R., said, "It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by courts of justice." In 9 Cyc. 542, it is said, "And one may agree not to do what he has a legal right to do, even though the promise may be restrictive of his personal rights." And see, *Brooks* v. *Cooper,* 50 N. J. E. 761, 767; *Collister* v. *Hayman,* 183 N. Y. 250, 256; *Mosler Safe Co.* v. *Safe Dep. Co.,* 199 N. Y. 479, 485; *Waite* v. *Merrill,* 4 Greenl. 102. In *Daley* v. *People's B. L. & S. Assn.,* 178 Mass. 13, 19, it was said, "Courts are less and less disposed to interfere with parties making such contracts as they choose, so long as they interfere with no one's welfare but their own."

Wherein an agreement made with her daughter by an elderly lady living upon her own means and upon her own premises in a country district, who does not appear to have been engaged in any business, trade or profession, upon a valuable and adequate consideration, that she will not incur indebtedness at any one time in excess of $1000, is unreasonable, oppressive, immoral, or detrimental to public interests or welfare, I humbly confess my inability to see.