**PENDLETON et al. v. GREEVER.**

No. 9806—Opinion Filed Nov. 23, 1920.

Rehearing Denied Dec. 14, 1920.

(Syllabus by the Court.)

**1. Bills and Notes—Validity — Duress— Threats to Prosecute Son.**

A note executed by a father to pay the debts of his son, under threats by the debtor that the son would be prosecuted for embezzlement unless the note was executed, and a promise not to prosecute if the note was executed, is executed under such duress as would entitle the maker to avoid the payment thereof.

**2. Same—Action on Note—Defense—Proof.**

In order to avoid the payment of a note executed under threats to prosecute a son for a felony where no indictment has been returned or no prosecution pending, it is not incumbent on the maker to show that a felony had, in fact, been committed.

**3. Same—Availability of Defense to Surety.**

Where a note is procured from a father under threats to prosecute a son for felony, and a promise by the debtor that the son would not be prosecuted if the father would execute the note with another as surety, the defense of the illegality of the consideration is equally available to the surety.

Error from District Court, Tillman County; Frank Mathews, Judge.

Action by J. H. Pendleton and others against C. B. Greever, on promissory note. Judgment for defendant, and plaintiffs bring error. Affirmed.

O. H. Searcy and Berry, Stokes & Morgan, for plaintiffs in error.

Wilson & Roe, for defendant in error.

PITCHFORD, J. Prior to the 22nd day of September, 1910, plaintiffs in error were engaged as partners in conducting a bank known as the Waggoner Banking Company, at Vernon, Texas. The Texas-Oklahoma Grain Company was conducted in the same town by one Hugh Greever, as manager, a brother of the defendant. The stock in the grain company was owned by Hugh Greever, his wife, and another brother of the defendant. The grain company had become indebted to the banking company in a large sum. Upon settlement and after assigning to the bank the assets of the grain company, there was still due the bank the sum of $5,000. W. W. Greever, the father of Hugh Greever, paid the bank $2,000 in cash and with the defendant executed the note sued on.

The execution of the note was admitted by the defendant, who assumed the burden of proof and sought to defeat recovery by relying upon section 8 of his answer, which is as follows:

"And for further answer to the plaintiff's petition this defendant says, that said note is null and void for the reason that it was executed in pursuance of a contract and agreement which was against public policy and void, under the following circumstances, to wit: That at the time the said note was executed, the plaintiffs were alleging that one Hugh Greever, who is the son of W. W. Greever, had committed an offense against the laws of the state of Texas, in that he had defrauded plaintiffs and misappropriated funds of a corporation of which he was an officer, and the said plaintiffs were threatening to prosecute him for said alleged offenses, which constituted felonies under the laws of the state of Texas, said plaintiffs agreeing with the said Hugh Greever and with W. W. Greever and this defendant that if they would sign the note herein sued on that the plaintiff would cover up and quash said prosecution and excuse the said Hugh Greever from his crime and that said note was signed in pursuance of said agreement and there was no other consideration for the same; that said agreement was and is contrary to public policy and that by virtue of said fact, said note is wholly void."

W. W. Greever testified in behalf of the defendant that he met Mr. Hicks, the cashier of the bank, together with some of the directors, in the office of Mr. Cook, who was the attorney for the banking company; that threats were there made by the representatives of the bank that Hugh Greever would be prosecuted for dissipating and embezzling the funds of the grain company unless the indebtedness to the bank was adjusted; that it was finally agreed that if W. W. Greever would pay $2,000 cash and execute his note for $3,000 with the defendant as surety, Hugh Greever would not be prosecuted. W. W. Greever further testified that he was instructed at the time to go to Frederick, Oklahoma, where the defendant resided, and see whether the defendant would sign the note with him, and they promised "if I could get Charlie to sign the note with me, the matter would be settled, and promised they would release Hugh and not prosecute him." He further testified that he went to Frederick and stated to the defendant the threats that had been made to prosecute Hugh and the promise not to prosecute if the defendant would sign the note. The defendant corroborates W. W. Greever as to what occurred at Frederick.

It is the contention of the plaintiffs that, in order for the defendant to be relieved of liability, as no indictment had been returned and no prosecution was pending at the time of the execution of the note, it was necessary for him to allege and prove that a crime, the prosecution of which had been threatened against Hugh Greever, had actually been

committed, and that there was a positive agreement, either expressed or implied, to stifle the prosecution of the same; and cite us to a number of authorities. We have carefully examined the authorities cited, but decline to follow the rule therein enunciated. In a criminal prosecution for the offense of compounding a felony, the injury is primarily to the public and it is apparent why it should be required, in the absence of an indictment or a pending prosecution, to allege and prove that a felony had actually been committed. Evidently the authorities cited by plaintiffs followed this rule in civil actions of this nature.

We are of the opinion that it is more in keeping with modern conceptions of right dealings between individuals that, in order to render a contract voidable on the ground that its sole consideration was the suppression of a prosecution, the crime charged need not have been committed, and one should not be encouraged to obtain a promise upon the threat to accuse of a felony as in the instant case and afterwards avoid the consequences by showing that there was no felony committed as a matter of fact.

In the case of Koons v. Vauconsant, 129 Mich. 260, 88 N. W. 630, 95 Am. St. Rep. 438, the court said:

"The arrangement, then, was to all intents and purposes an agreement to compound an alleged felony. It may be said that they thought there was no forgery, and perhaps there was none, and that, therefore, no felony was really compounded; but one cannot obtain a promise upon a threat to accuse of a felony and afterward avoid the consequences and make the consideration legal by showing that there was no felony committed as a matter of fact. If the minds of these parties met upon the consideration, it was that there should be no prosecution for a crime which both understood defendant's representatives to assert. There is some confusion on the subject of duress, and it may be due in part to the unnecessary attempt to invalidate such contracts as this upon the ground of duress. It is evident that there are few husbands, wives, parents, or children who would not make a heavy sacrifice to avert punishment to their immediate relatives, and this is so natural that few blame them. Yet the law punishes those who compound a felony. As a consideration for an undertaking, a promise not to prosecute a felony is illegal and void. No other consideration appears here. The moral obligation would, perhaps, support a promise, if it entered into the transaction. There is not only no evidence that it did, but the clearest evidence that it did not. It is right that men should pay their debts, and not culpable for creditors to collect by legitimate means and methods; but making merchandise

of the criminal law is not a lawful method."

In the case of Beal-Doyle Dry Goods Company et al. v. Barton (Ark.) 97 S. W. 58, the Supreme Court of Arkansas lays down the same rule in the following language:

"It is not necessary for a party to be under arrest and actually in the course of being prosecuted, in order to enable a party who secures the dismissal or termination of the prosecution for a moneyed consideration, to plead the illegality of such consideration in bar of its collection. Mr. Beach says: 'A contract, the consideration of which, in whole or in part, is the suppression of a criminal prosecution, is without any legal efficacy, either as a cause of action or as a defense to an action not founded on or arising out of the agreement.' 2 Beach on Modern Contract, sec. 1551. Contracts to suppress evidence or in any way interfere with the course of justice, whether within the terms of any statute or not, are against public policy and void. See note on page 121, Henderson v. Palmer 22 Am. Rep. 117; Peed v. McKee, 42 Iowa, 689, 20 Am. Rep. 631. A note or agreement where the consideration is the prevention or dismissal of a prosecution is void, even though the amount represents a debt due the payee. Rogers v. Blythe, 51 Ark. 519, 11 S. W. 822; Kirkland v. Benjamin, 67 Ark. 480, 55 S. W. 840."

In Smith v. Steeley, 80 Iowa, 738, 45 N. W. 912, it is said:

"We need not inquire into the soundness of the position of Rees & Co.'s counsel to the effect that, to support the defense set up by Steeley and wife, it must be shown that the son had in fact embezzled, as charged by Rees, for the reason that there can be no compounding of a felony unless a felony has been committed. We think, to support Steeley's defense, it is not necessary to prove that the son was guilty of embezzlement. Whether he was or not the result would be the same. If he was guilty, it must be conceded that Rees & Co., under the facts, were guilty of compounding a felony, and the notes and mortgages are therefore void, as being made in the commission of an offense. If he was not guilty, they were without consideration, for the reason above stated, and cannot be enforced."

In Turle v. Sargent (Minn.) 56 Am. St. Rep. 475, it is said:

"If the evidence justifies the findings of fact, the conclusion that the defendants are entitled to judgment is correct. The plaintiff, however, while conceding that the evidence supports the finding that the original note was given upon his agreement not to prosecute Hooker, denies that this was an illegal consideration, or that it was the only consideration for the note. As to the first, his claim is that, the plaintiff and Hooker being partners, it was a legal impossibility for the latter to embezzle partnership funds, and therefore his misappropriation of the funds

was not a crime, and the agreement not to prosecute him was perfectly harmless. We are not prepared to concede this proposition, either as a question of law or morals: Gen. Stats. 1894, sec. 6710. But we are not called upon to decide the question, for, if the promise not to prosecute was not illegal, because it related to a supposed crime, which it was impossible for Hooker to commit, it necessarily follows that a promise to refrain from doing that which it is legally impossible to do cannot be a valid consideration for the execution of a promissory note. Therefore, if, as the court has found, there was no other consideration for this original note except such promise, it was wholly without any consideration."

In the instant case the defense relied upon, as disclosed by section 8 of the answer, was that the note having been executed under the circumstances therein enumerated, the same was against public policy and without consideration.

It is essential to the existence of a contract that there should be parties capable of contracting; their consent; a lawful object and sufficient consideration and not against public policy; and when it is shown that the purpose of the party benefited by the contract was not to promote the ends of public justice, but was to secure the payment of a debt, it should not receive the favorable consideration of a court of justice.

In Union Central Life Insurance Co. v. Champlin, 11 Okla. 184, 55 L. R. A. 109, Mr. Justice Hainer quotes with approval Chief Justice Story on the doctrine of public policy as follows:

"Public policy is in its nature so uncertain and fluctuating, varying with the habits and fashions of the day, with the growth of commerce and the usages of trade, that it is difficult to determine its limits with any degree of exactness. It has never been defined by the courts, but has been left loose and free from definition in the same manner as fraud. This rule may, however, be safely laid down: That whenever any contract conflicts with the morals of the time and contravenes any established interest of society, it is void as being against public policy."

It is contended by plaintiffs that defendant cannot be heard to claim benefit under sections 900 and 901, Rev. Laws 1910, because of the alleged threats to prosecute Hugh Greever, because under these statutes duress consists of a threat of "unlawful confinement of the person or party or of a husband or wife of such party, or of the ancestor, descendant, or adopted child of such party, husband or wife."

The indebtedness to the bank was past due; nothing to indicate that Hugh Greever was personally liable for this indebtedness; the indebtedness was due from a corporation of which Hugh Greever was the chief stockholder and manager. While the bank officials deny that any threats to prosecute were made, the jury found otherwise, probably influenced in so deciding by the fact that this indebtedness not being the personal obligation of Hugh Greever, the threats were resorted to for the very purpose of inducing the execution of the note by W. W. Greever and defendant.

It will be borne in mind that Hugh Greever did not sign the note. When the meeting was had in the office of the attorney for the bank, threats were made that Hugh Greever would be prosecuted unless arrangements were made to pay the $5,000 claimed to have been embezzled by Hugh. It was at that time suggested that if W. W. Greever would pay $2,-000 cash and execute his note for $3,000, securing the same by a mortgage upon certain property in Frederick, there would be no prosecution of Hugh. When it was discovered that there was a prior mortgage on the Frederick property, and W. W. Greever only had an equity in the same, it was then suggested that W. W. Greever go to Frederick and see if C. B. Greever, the defendant, would sign the note with him, which was subsequently done. Therefore, it clearly appears that C. B. Greever was only surety for W. W. Greever; but plaintiffs say, in effect, even if it be conceded that W. W. Greever could rely upon the defense of "duress," that the plea would not be available to C. B. Greever, and claim that a surety cannot plead duress of his principal where no statute is violated.

Under sections 900 and 901, Rev. Laws 1910, if the jury believed that threats were made to prosecute Hugh Greever and that W. W. Greever was thereby induced to execute the note and the threats were the sole consideration for the execution of the same, then the defense of duress would be available to W. W. Greever. The defendant, C. B. Greever, having signed the note as surety for his father, W. W. Greever, then the surety would be allowed to plead the defense available to the principal, if it appeared that a statute of the state had been violated in obtaining the note from the principal.

Section 2682, Rev. Laws 1910, defines, "extortion" to be the "obtaining of property from another with his consent, induced by the wrongful use of force or fear or under color of official rights."

Section 2683, Id., says that:

"Fear, such as will constitute extortion may be induced by a threat, either * * *

to do a wrongful injury to the person or property of the individual threatened, or to any relative of his or member of his family; or \* \* \* to accuse him, or any relative of his or members of his family, of any crime. \* \* \*"

Section 2686, Id., provides:

"Any person who, by any extortionate means, obtains from another his signature to any paper or instrument, whereby, if such signature were freely given, any property would be transferred, or any debt, demand, charge or right of action created, is punishable in the same manner as if the actual delivery of such property or payment of the amount of such debt, demand, charge or right of action were obtained."

If the threats to prosecute were made, the same would constitute extortion; it therefore follows that plaintiffs' contention on this point is not tenable.

It is further contended on the part of the plaintiffs that the court committed error in admitting the statements made by W. W. Greever to the defendant, for the reason, as alleged by the plaintiffs, that W. W. Greever was not the agent of the bank and there was no proof that the officials of the bank or anyone with authority authorized him to represent to the defendant that Hugh Greever would be prosecuted unless the defendant signed the note. As to whether W. W. · Greever, under the circumstances, was the agent of the bank, it is not necessary to decide. However, that question has been passed upon by the Supreme Court of Arkansas in the case of Beale-Doyle Dry Goods Co. v. Barton, supra, wherein it is said:

"In an action on an obligation whereby a father guaranteed payment of the debts of his sons, it appeared that an attorney employed by the creditors of the sons to secure the obligation from the father made representations to the father concerning the prosecution of the sons, which representations induced the father to make the obligation. Held, that the representations of the attorney were binding on his clients, though the attorney was also employed by the father to represent and protect his sons."

We are of the opinion that the judgment of the trial court should be affirmed, and it is so ordered.

All the Justices concur.