ROBINSON v. THURSTON et al.

(Circuit Court of Appeals, Ninth Circuit.   February 11, 1918.)

No. 3038.

CONTRACTS ⬤⟹116(1)—VALIDITY—PUBLIC POLICY.

An agreement by a daughter to cancel an indebtedness due from her mother, who was an elderly woman of moderate means, on payment of a nominal consideration, providing that, if the mother should at any time thereafter mortgage or sell any of her real estate, or incur indebtedness amounting at any one time to $1,000, without the consent in writing of the daughter, then the indebtedness canceled should immediately become due and payable, is valid, and not open to attack on the ground that it is in restraint of trade, for the mother's alienation of her property was in no way burdened.

In Error to the Supreme Court of the Territory of Hawaii.

Action by Caroline J. Robinson against Lorrin A. Thurston and another, executors under the will of Eliza Roy, deceased. A judgment for defendants was affirmed by the Supreme Court of the Territory of Hawaii, and plaintiff brings error. Reversed and remanded, with directions.

The defendants in error are the executors of the will of Eliza Roy, deceased, who was the mother of Caroline J. Robinson, the plaintiff in error here. The latter commenced the action in the circuit court of the First Judicial circuit of the territory of Hawaii against the present defendants in error, as the executors of her mother's estate, to recover upon three certain promissory notes, the first of which was alleged in the complaint to have been executed September 23, 1884, by one W. F. Roy to Samuel C. Allen and Mark P. Robinson, for $2,000, payable two years after date, with interest thereon at the rate of 10 per cent. per annum, payable semiannually, which the complaint alleged Eliza Roy subsequently, for a valuable consideration, agreed with the holders thereof to pay, and which note the complaint alleged was subsequently assigned to and became the property of the plaintiff in the action—the whole of both principal and interest remaining due and unpaid. The second of the notes the complaint alleged to have been executed by Eliza Roy to John N. Robinson July 31, 1886, for $3,750, payable three years after date, with interest thereon at the rate of 9 per cent. per annum payable semiannually, and that the note was subsequently assigned to the plaintiff, who remains the owner and holder thereof, no part of the principal of which has been paid and none of the interest thereon, except $1,030.30. The other note sued on the complaint alleged to have been executed July 23, 1895, by W. F. Roy and Eliza Roy, to Henry Holmes, for $125, payable on demand, which note was subsequently assigned to the plaintiff, who remains the owner and holder thereof, with both principal and interest unpaid.

The complaint then alleged that an agreement was entered into November 27, 1905, between the plaintiff and her mother, which agreement recited, among other things, that: "Whereas, the said Eliza Roy is indebted to the said Caroline J. Robinson in the following sums [describing the said notes] total amount of principal and interest as of November 23, 1905, $14,490.83; and whereas, the said Caroline J. Robinson has agreed to cancel and release the said indebtedness and the said notes and mortgages, and to release the said Eliza Roy from said indebtedness and all claims under said notes and mortgages, on the terms and conditions hereinafter contained, and the said Eliza Roy has agreed to said terms and conditions: Now, therefore, in consideration of the premises and of the sum of $10 to the said Caroline J. Robinson paid by the said Eliza Roy, the receipt whereof by the said Caroline J. Robinson is hereby acknowledged, and the further consideration of the covenants and agreements of the said Eliza Roy hereinafter contained, the said

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Caroline J. Robinson doth hereby acknowledge full payment and settlement of said indebtedness, principal and interest, hereinabove set forth, and doth hereby release the same and cancel and discharge the said notes and mortgages. Provided, however, that if the said Eliza Roy shall at any time hereafter mortgage or sell any of her real estate, or shall incur indebtedness amounting at any one time to the sum of $1,000 and upwards, without the consent in writing of the said Caroline J. Robinson, then and in any such case this acknowledgment of payment of said indebtedness and said release and cancellation and discharge of said notes and mortgages shall be null and void and of no effect, and said enumerated indebtedness and interest thereon shall immediately become due and payable by the said Eliza Roy, her heirs, executors, administrators, and assigns, to the said Caroline J. Robinson, her heirs, executors, administrators, and assigns with interest thereon at the several rates aforesaid in the same manner as though this acknowledgment of payment and release of said notes and mortgages had not been made." The agreement further set out that the said Eliza Roy, in consideration of the foregoing agreements, for herself, her heirs, executors, administrators, and assigns, would not, without the approval in writing of the said Caroline J. Robinson, sell or mortgage any of her lands or incur any indebtedness in excess at any one time of the sum of $1,000, expressly acknowledged that the indebtedness and interest thereon as set forth in the agreement was then due and payable to the said Caroline J. Robinson, and further agreed that, in case of the violation by her of any part of her agreement, "then and in such case the said indebtedness, principal and interest, shall be and become immediately due and payable to the said Caroline J. Robinson, her heirs, executors, administrators, and assigns, in the same manner as though this acknowledgment of payment and release had not been made."

The complaint further alleged that thereafter, between July 31, 1908, or thereabouts, and June 8, 1909, or thereabouts, "both dates inclusive, the said Eliza Roy did sell and convey certain portions of her real estate, without the consent of the said plaintiff, and did thereafter, without the consent of said plaintiff, incur indebtedness amounting in the aggregate at one time to more than $1,000; that by the said sales and conveyances, and the incurring of the said indebtedness, the said Eliza Roy did violate the condition of the said agreement, and her said covenants and agreements therein contained, and by reason thereof the said promissory notes, and each of them, together with the interest thereon, have become due and payable to the plaintiff, and the same are now wholly due, owing, and unpaid, save as hereinbefore alleged, to the said plaintiff"; that on December 13, 1913, and within the period prescribed by law for the presentation of claims of creditors against the estate of said Eliza Roy, deceased, the plaintiff duly presented to the defendants to the action, as executors, a duly authenticated claim of the amounts due upon the said notes, which claim was rejected by the executors March 4, 1914, whereupon the action was commenced to recover both principal and interest of the notes.

The defendants filed an answer denying each and every of the allegations of the complaint, and giving notice (pursuant to a rule of the trial court) that among other defenses they would rely upon the defense of payment, the statute of frauds, and the statute of limitations. An amended answer was subsequently filed, admitting certain allegations of the complaint and denying others, and alleging that any and all claims then held by the plaintiff against the said Eliza Roy were fully paid and settled by the agreement of November 28, 1905, and further setting up that more than six years had then elapsed since the notes became due and payable, and that all of them were barred by the statute of the territory of Hawaii in regard to the limitation of actions.

Holmes & Olson, Henry Holmes, and Clarence H. Olson, all of Honolulu, T. H., for plaintiff in error.

Andrews & Pittman, Lorrin Andrews, and Wm. B. Pittman, all of Honolulu, T. H., for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge (after stating the facts as above). The record shows that in the trial court a jury was waived and the case tried and submitted to the court upon evidence without substantial conflict, resulting in a judgment in favor of the defendants—that court holding that by the agreement of November 27, 1905, the notes constituting the basis of the plaintiff's claim were extinguished, and their legal obligation thereafter forever ended. Upon appeal from that judgment, the Supreme Court of the territory unanimously agreed that the trial court was in error in that regard, and that the legal effect of the agreement referred to was but to suspend the payment of the notes during the observance of the obligations thereby imposed upon Eliza Roy; but a majority of the court, from whose judgment the present writ of error comes, held that the obligations so imposed on Mrs. Roy were in restraint of trade and against public policy, and therefore void, for which reason the judgment of the trial court was affirmed, the Chief Justice dissenting.

Counsel for the defendants in error do not here contest the finding of the trial court (affirmed on appeal) to the effect that Mrs. Roy did incur indebtedness beyond the amount prohibited in and by the agreement in question, and their contention that the plaintiff in the action was estopped from complaining thereof by reason of having led Mrs. Roy to believe that the restraint imposed upon her by the provisions of the agreement had been removed by her consent to the conveyance by her mother of certain of her land (if otherwise meritorious) is rendered without force by the undisputed evidence contained in the record as to the circumstances attending those conveyances. The only question, therefore, with which we have to deal, is whether or not the prohibition against the incurring of indebtedness by Mrs. Roy to the amount of $1,000 was contrary to public policy as being in restraint of trade, and therefore void, unless it can be successfully maintained that the release of the indebtedness contained in the agreement was absolute. We do not so regard it, nor did the Supreme Court of Hawaii.

The agreement expressly recited that Mrs. Robinson had "agreed to cancel and release the said indebtedness and the said notes and mortgages," and to release her mother therefrom on "the terms and conditions" thereinafter stated; wherefore, proceeded the agreement, in consideration of the $10 payment, and in further consideration of the expressed covenants and agreements of her mother, Mrs. Robinson acknowledged full payment of the indebtedness and thereby released and discharged the same: Provided, however, that should Mrs. Roy at any time thereafter mortgage or sell any of her real estate, or incur indebtedness in the prohibited amount, such acknowledgment of payment and discharge of the notes should thereupon become void and of no effect, and the "said enumerated indebtedness and interest thereon shall immediately become due and payable by the said Eliza Roy, her heirs, executors, administrators, and assigns, to the said Caroline J. Robinson, her heirs, executors, administrators, and assigns, with interest thereon at the several rates aforesaid, in the same manner as though this acknowledgment of payment and release

of said notes and mortgages had not been made." In other words, as we construe the agreement, the release by the creditor of the indebtedness was not absolute, but made dependent—contingent—upon the will of Mrs. Roy, who might or might not, as she chose, incur indebtedness to and over the prohibited extent, with the consequence in the one case that the indebtedness would remain suspended, and in the other that the operation of the release would thereby end, and the obligations theretofore suspended at once become again binding. That was, in effect, the express contract of the parties to the agreement, and we see no sound reason why it should not be enforced. In Mosler Safe Co. v. Maiden Lane S. D. Co., 199 N. Y. 479, 485, 93 N. E. 81, 83 (37 L. R. A. [N. S.] 363), the court said:

"Parties to contracts have the right to insert any stipulations that may be agreed to, provided that they be neither unconscionable, nor contrary to public policy."

In Brooks v. Cooper, 50 N. J. Eq. 761, 767, 26 Atl. 978, 980 (21 L. R. A. 617, 35 Am. St. Rep. 793) the court said:

"The contract not being fulfilled between the parties, the question arises: Can it be enforced, or is it so manifestly contrary to public policy, in contravention of the statute, and so injurious to the public good, that it defeats itself? In determining this there must be kept in view the general rule of law that, where there is no statutory prohibition, the court will not readily pronounce an agreement invalid on the ground of policy or convenience, but is, on the contrary, inclined to leave men free to regulate their affairs as they think proper. Where, however, a contract is of such a nature that it cannot be carried into execution without reaching beyond the parties and exercising an injurious influence over the community at large, every one has an interest in its suppression, and it will be pronounced void from a due regard to the public welfare."

In Daley v. People's Building, etc., Association, 178 Mass. 13, 19, 59 N. E. 452, 453, the court said:

"Courts are less and less disposed to interfere with parties making such contracts as they choose, so long as they interfere with no one's welfare but their own."

In 9 Cyc. 542, it is said:

"One may agree not to do what he has a legal right to do, even though the promise may be restrictive of his personal rights"—citing Waite v. Merrill, 4 Me. (Greenl.) 102, 16 Am. Dec. 238; Com. v. Schultz, Brightly, N. P. (Pa.) 20.

And in the case of Baltimore & Ohio, etc., Ry. Co. v. Voigt, 176 U. S. 498, 505, 20 Sup. Ct. 385, 387 (44 L. Ed. 560) the Supreme Court said:

"It must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare. It was well said by Sir George Jessel, M. R., in Printing, etc., Co. v. Sampson, L. R. 19 Eq. 465: 'It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because, if there is one thing which more than another public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when

entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore you have this paramount, public policy to consider—that you are not lightly to interfere with this freedom of contract.'"

The record shows that Mrs. Roy was at the time of entering into the agreement with her daughter, an elderly woman living upon her own premises in a country district, upon her own (but obviously, from the evidence, very moderate) means, and was not, so far as appears, engaged in any business, trade, or profession. Assuming that to one so circumstanced the doctrine of the courts holding, in the interest of the public welfare, contracts void that are in restraint of trade, has any application, we agree with the Chief Justice of the court below that the contract here involved was not, in view of the evidence, "unreasonable, oppressive, immoral, or detrimental to the public interest or welfare."

Accordingly, the judgment must be and is reversed, and the cause remanded to the trial court, with directions to enter judgment for the plaintiff in the action.