AMY Y., CALVIN and IRENE ARAKAWA, et al., Plaintiffs-Appellees *v.* LIMCO, LIMITED, a Hawaii corporation, et al., Defendants-Appellants

NO. 6097

DECEMBER 19, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

This appeal is from a judgment for plaintiffs-appellees, after a bench trial, in an action seeking declaratory relief in the form of a construction of the cancellation provision in Subscription and Purchase Agreements for the sale and purchase of condominium apartments. We affirm.[1]

---

[1] The prayer of the complaint is that a declaratory judgment be entered construing the cancellation provisions of the Subscription and Purchase Agreements and determining the respective rights and liabilities of the parties. The defendants by their answer joined in the prayer of the complaint. The judgment was solely: "That Plaintiffs have judgment against Defendants with costs of suit taxed at $240.00." It appears to be assumed by the parties to this appeal that the judgment incorporated the trial court's conclusions of law. The appeal has been briefed and argued upon the premise that the dispositive question is whether Limco was entitled to cancel its Subscription and Purchase Agreements with appellees on April 10, 1974. Since we conclude that Limco was not entitled to a judgment declaratory of its right to cancel the agreements, we affirm the judgment appealed from without occasion to consider its deficiencies.

Defendant-appellant Limco, Limited (Limco), as seller entered into Subscription and Purchase Agreements (SPAs) with each of the plaintiffs-appellees, as well as with other subscribers. The SPAs bore no dates of execution or effectiveness. By the terms of the SPAs, the subscribers agreed to purchase apartments in a multi-family condominium housing project, known as 1616 Liholiho, 30 days after notice of Limco's readiness to convey, and Limco agreed to convey good and marketable title to each apartment. Each subscriber paid a deposit into escrow at the time of signing and agreed to pay the balance of the purchase price at the time of conveyance of the apartment. By various recitals and references, the SPAs disclosed that the condominium building was yet to be constructed and was to be financed by a mortgage insured by the Federal Housing Administration (FHA) pursuant to Section 234 of the National Housing Act. The following provision in each of the SPAs gives rise to this dispute:

If Subscriber within five (5) days after the execution of this Agreement notifies the Seller in writing that Subscriber wishes to withdraw from this Agreement, the amounts theretofore paid by him under this Agreement will be returned to him thereupon all rights and liabilities of Subscriber hereunder shall cease and terminate. The right of the subscriber to withdraw shall, however, expire unless exercised within such five (5) day period, except that if title to the family unit is not conveyed to the Subscriber in accordance with FHA requirements on or before one (1) year, the Subscriber and the Seller shall have the right to withdraw from this agreement, in which event Seller shall return to Subscriber all sums paid hereunder and Subscriber's and Seller's rights shall cease and terminate without further liability on the part of either party.

On April 10, 1974, Limco sent to each of the subscribers (including appellees) a letter which recited that ground breaking for the project had occurred in January 1973, that completion was not expected for an additional three months, that costs had risen and that the then market value of the apartments exceeded the purchase prices provided in the SPAs.

The letter referred to the above quoted provision of the SPAs and stated:

> This provision of the Purchase Agreement clearly gives us the ability to cancel your Purchase Agreement with us. However, before we make such an election, we feel it only fair to contact you to see if there is some way we can resolve this problem to the mutual benefit of both parties without having to cancel your agreement. A possible solution which would allow us to avoid making the election to cancel is a premium paid by you to us in the amount of $3,500 to help realign today's cost and yesterday's purchase price. Please indicate your position by placing your signature in the appropriate block below. If we do not hear from you by April 24, 1974, we shall be compelled to cancel your agreement.

Appellees did not agree to pay the additional premium requested. The building was completed, the FHA mortgage insurance requirements were met, and the apartments were conveyed to the subscribers in September 1974, apparently pursuant to an agreement whereby notes for the premium were deposited in escrow to await resolution of this dispute. This action was instituted in the following month.

The record does not show that Limco fulfilled its threat to cancel the SPAs, but the parties have treated the complaint as presenting the question whether Limco possessed a cancellation privilege on April 10, 1974. In view of the conclusion we have reached, the question whether that privilege was exercised or remains capable of exercise need not be addressed. Limco argues that the quoted provision entitled it to cancel if conveyance of the apartment in accordance with FHA requirements could not be made prior to the expiration of one year after the signing of the particular SPA, that all SPAs were signed prior to April 9, 1973, that on April 10, 1973 the building was not completed and that completion of the building was an FHA requirement. Appellees argue that the quoted provision entitled either party to withdraw only if failure to convey in accordance with FHA requirements continued for one year after completion of the building, that such conveyance took place promptly after the building was com-

pleted and that no cancellation privilege came into being.

On the present record, it is difficult to deal with either of the opposing contentions. However, as the case comes to us, failure on the part of Limco to sustain its claimed right of cancellation asserted in the April 10, 1974 letter disposes of its appeal and we need not consider whether the interpretation advanced by appellees is sustainable. To prevail, Limco must demonstrate both that the SPAs entitled it to cancel one year after execution and also that the year had expired on April 10, 1974.

We look first at the text of the provision in dispute. It is immediately apparent that a substantial deficiency exists in the expression of the parties' intention, whatever it may have been. The trial court found that the quoted provision was part of a model form provided by FHA in which a blank appeared where "one year" was inserted in the SPAs. There was testimony that the insertion was made by Limco's attorney at the direction of FHA, and that the FHA practice was to arrange, by completion of this blank, for a period following construction of the condominium building for compliance with FHA requirements. However, by inserting a designation of a period of time where a fixed date is required by the context, the draftsman produced a phrase which is incapable of interpretation without the addition of a starting date for the period. It was obviously intended that the privilege of withdrawal from the agreement should be exercisable upon failure to comply with certain conditions prior to the expiration of one year from some date or occurrence. Without specification of the starting date, however, the SPA fails to provide any means by which it can be determined whether and when the one year period commenced.

Limco urged upon the trial court, and argues to us, that the circumstances surrounding the execution of the SPAs require an inference that the starting date of the one year period was intended to be the date of execution of each SPA. No support for this inference appears from any particular circumstance to which reference is made, and the argument is premised solely upon the asserted need of some provision to enable the parties to withdraw from their commitments if

construction of the building and compliance with FHA requirements should become infeasible. We may accept *arguendo* the premise that the parties would desire such a provision, without finding in that premise support for an inference that a date one year from the date of execution of the SPAs was intended to be designated by the parties.

There was testimony that signature of the SPAs by the subscribers took place in January 1973, and that the construction contract pursuant to which construction was then progressing provided a completion date in January 1974. The FHA requirements to which the withdrawal provision referred, it appears from the testimony, included completion of the building and the sale of 80% in value of the apartments to purchasers whose credit was approved by FHA. The SPAs signed in January 1973 were relied upon by Limco for compliance with the 80% sale requirement. The cancellation provision in the SPAs inured to the benefit of the subscribers as well as Limco. Without more explanation than appears from the record, it appears to us that it would have been *incomprehensibly imprudent for Limco to so relate the date* for completion of the construction contract to the date for cancellation of the SPAs that even a minor delay in construction would release all of the subscribers from their commitments.

The SPAs were prepared by counsel for Limco in consultation with FHA. There was testimony to the effect that the representatives of FHA intended that the one year period specified in the cancellation provision should commence upon the completion of the condominium building. However, we are dealing with agreements between Limco and appellees, and there is no evidence that appellees participated in the preparation of the SPAs or were aware of any understandings of FHA or Limco as to the meaning of the disputed provision. As between Limco and appellees, Limco must be regarded as the party by whom the SPAs were prepared. The trial court concluded that ambiguities in the SPAs should be resolved against Limco, as the preparer of the agreements. We agree. *Masaki v. Columbia Casualty Co.*, 48 Haw. 136, 395 P.2d 927 (1964); *Gushiken v. Shell Oil Co.*, 35 Haw. 402

(1940). The trial court found, in effect, that Limco had not sustained its burden of supporting by circumstantial inferences the meaning which it sought to imply to the cancellation provision. We find no reason to disagree with the trial court.

Were Limco to prevail upon the question of the meaning of the cancellation provision, it would nevertheless fail in demonstrating its right to withdraw from the SPAs on April 10, 1974. The existence of that right depended upon expiration of a one year period which commenced not later than April 10, 1973, but after execution of appellee's SPAs. Limco must show, therefore, that the SPAs were executed not later than April 9, 1973. As testified by an officer of Limco, the SPAs were signed by the subscribers during January 1973, at Limco's offices or elsewhere, and then returned to Limco for signature. No dates appear in the SPAs as the dates of execution or effectiveness. They were received by Limco at various times. There is no testimony from which the trial court could have determined which of the SPAs were signed in Limco's offices and which elsewhere, or the time involved in the return of the SPAs to Limco for signature. The trial court could only have conjectured whether any, and which, of the SPAs remained uncompleted by Limco's signature on April 9, 1973.[2] It was Limco's burden to establish the existence of a cancellation privilege on April 10, 1974. There was a failure of proof on this essential issue.

The judgment is affirmed.

*John D. Thomas, Jr. and Michael F. McCarthy (Conroy, Hamilton, Gibson, Nickelsen & Rush* of counsel) for defendants-appellants.

*Gilbert M. Halpern and Rodney Kim (Kim and Kim* of counsel) for plaintiffs-appellees.

---

[2] Appellants introduced in evidence an internal memorandum of FHA, dated December 20, 1972, indicating that on that date 80% of the total value of all units in the condominium project had been subscribed for by approved purchasers. However, the memorandum further states that all approvals were conditioned upon signatures of the sales contracts by the purchasers. Appellants did not offer any evidence of the dates of execution of the SPAs which might have been available in FHA or other files.