300 P.3d 1009

Robert KUTKOWSKI, Petitioner/Plaintiff–Appellant/Plaintiff–Cross–Appellee,

v.

PRINCEVILLE PRINCE GOLF COURSE, LLC, a Delaware Limited Liability Company, Respondent/Defendant–Appellee/Defendant–Cross–Appellant,

and

Doe Corporations 1–5, Doe Limited Liability Companies 1–5, Doe Partnerships 1–5, Doe Entities 1–5, John Does 1–5, and Jane Does 1–5, Defendants.

No. SCWC–28826.

Supreme Court of Hawaiʻi.

May 14, 2013.

Joe P. Moss, and Margery S. Bronster, Honolulu, and Rex Y. Fujichaku, Honolulu, Bronster Hoshibata, for petitioner.

David W. Proudfoot and Max W.J. Graham, Belles Graham Proudfoot, Wilson & Chun, LLP, Lihue, for respondent.

NAKAYAMA, ACOBA, and McKENNA, JJ., and Circuit Court Judge NAKASONE, assigned by reason of vacancy; with RECKTENWALD, C.J., concurring and dissenting separately.

Opinion of the Court by McKENNA, J.

## I. Introduction

At issue in this appeal is whether the sale of an undivided parcel of real property trig-

gered a lessee's right of first refusal to purchase a small part of that property. Based on the specific circumstances of this case, we hold that it did. We therefore reverse the ICA's judgment on appeal and remand this case to the Circuit Court of the Fifth Circuit ("circuit court") for further proceedings consistent with this opinion.

## II. Background

### A. Factual Background

None of the material facts in this case are genuinely disputed. At issue in this case is a half-acre parcel of land with a house located on Anini Road on Kauai (sometimes "the Property"). The Property is part of an undivided 1040–acre parcel (sometimes "Master Parcel") now owned by Princeville Prince Golf Course, LLC ("PPGC"). In 1971, Kutkowski began subleasing the Property from John Kai. When Kai died, Kutkowski continued leasing the Property from Kai's brother, until Kutkowski himself became a direct lessee of Princeville Development Corporation under a five-year Agricultural Lease dated November 1, 1984. There was no option to purchase in the original Agricultural Lease.

After several renewals of the Agricultural Lease, Kutkowski and Princeville Corporation[1] entered into a License Agreement, dated August 23, 1998, effective from May 1, 1998 to and including April 30, 2003. It included the following "Option to Purchase" in Paragraph 2:

Licensor [Princeville Corporation] expressly reserves the right to sell the licensed premises during the term of this license and to place such signs and notices on or about the premises for such purpose, subject only to the rights of the Licensee [the Kutkowskis] contained herein. In the event Licensor decides to sell the premises, it shall be first offered to Licensee on terms and conditions provided by Licensor; PROVIDED, HOWEVER, that Licensee shall have at all times faithfully and punctually performed all of the covenants and conditions of this agreement on the part of Licensee to be performed. Licensee shall have sixty (60) days to accept the Licensor's offer or make a counter offer, PROVIDED [sic], HOWEVER, that if no sales contract is executed within one hundred twenty (120) days after Licensor's initial offer, (1) Licensor shall be free to offer the premises for sale to the general public and (2) this license agreement shall be automatically amended with occupancy to continue on a month to month term. Should the premises be thereafter sold during the term of the month to month license, Licensor shall give Licensee forty-five (45) days prior notice of termination of this license, upon which Licensee shall relinquish all rights hereunder.

(Emphasis added).

The License Agreement also contained the following provision entitled "Effect of Licensee's holding over" in Paragraph 22, which stated:

Any holding over after the expiration of the term of this agreement, with consent of Licensor, shall be construed to be a license from month to month, at the same rate as required to be paid by Licensee for the period immediately prior to the expiration of the term hereof, and shall otherwise be on the terms and conditions herein specified, so far as applicable.

A proposed sale of the Master Parcel from Princeville Corporation to PPGC was initiated on July 14, 2004. By letter dated September 6, 2004, Princeville Corporation proposed an elimination of Kutkowski's option to purchase the Property and enclosed a draft amendment to the License Agreement. Kutkowski did not sign it. Rather, in a letter, dated October 25, 2004, Kutkowski offered Princeville Corporation $250,000 for the Property, which was rejected. The sale closed on March 17, 2005.

Kutkowski's son remains on the Property. Kutkowski has continued to pay rent to PPGC, and PPGC has accepted the rental payments.

---

1. It is unclear from the record, but it appears that Princeville Corporation is a successor to Princeville Development Corporation.

## B. Procedural Background

On January 10, 2005, Kutkowski filed a Complaint against Princeville Corporation, praying for specific performance of Paragraph 2 of the License Agreement. Kutkowski also filed a Notice of Pendency of Action over the Property. Under the terms of the March 17, 2005 sale, PPGC and Princeville Corporation entered into an Assumption Agreement, under which PPGC accepted the grant and transfer from Princeville Corporation of, inter alia, the License Agreement and Kutkowski's claim for specific performance. Thereafter, on August 3, 2005, Kutkowski and Princeville Corporation filed a stipulation substituting PPGC as the defendant for Princeville Corporation. PPGC then counterclaimed, seeking declarations that (1) the license agreement was ineffective in conveying to Kutkowski any rights in the Property, and, in the alternative, (2) that the option to purchase clause (if it ever was effective) expired by its own terms on April 30, 2003.

The parties brought cross motions for summary judgment. Preliminarily, Kutkowski and PPGC agreed that the "option to purchase" contained in the License Agreement was really a "right of first refusal" ("ROFR").[2] Kutkowski and PPGC disagreed, however, over two issues, which each acknowledged were issues of first impression in Hawai'i, and which each acknowledged produced a split in authority in other jurisdictions: first, whether the ROFR survived into the holdover period, and, if it did, whether the sale of the Master Parcel triggered the ROFR over the Property.

As to the first issue, Kutkowski and PPGC each relied on the plain language of Paragraphs 2 and 22 in the License Agreement to argue, respectively, that the ROFR did and did not survive past the April 30, 2003 end date of the License Agreement. Neither contends that Paragraphs 2 and 22 are ambiguous, although each provided parol evidence (in case the circuit court found the provisions to be ambiguous) tending to support each's position. In addition to the plain language arguments, Kutkowski and PPGC each marshaled case law from other states and federal courts in support of each's position.

As to the second issue, Kutkowski and PPGC disagreed that the sale of the Master Parcel triggered Kutkowski's ROFR over the Property. PPGC argued that even if the ROFR had survived into the holdover period, Kutkowski could not exercise the right. PPGC also argued the ROFR extended only to the Property, not the entire Master Parcel, and the Property was never offered for sale; therefore, the ROFR was never triggered.

Kutkowski, on the other hand, argued that a lessor may not preemptively defeat a lessee's ROFR over a smaller parcel by selling a larger parcel that contains the smaller parcel. Kutkowski argued the remedy in those instances is specific performance.

Further, PPGC argued that the sale of the Property was conditioned upon (a) a county-approved subdivision plan carving out the Property, and (b) PPGC's decision to sell the Property. PPGC also argued the ROFR was void and unenforceable because it was legally impossible to perform the terms of the ROFR in an area zoned for five-acre minimum lot size. Kutkowski, on the other hand, argued that it was not legally impossible for PPGC to carve out Kutkowski's Property under the Kauai County Code, just burdensome, suggesting a variance was possible.

In conclusion, PPGC requested that the circuit court enter an order dismissing Kutkowski's claims, declare that Kutkowski's

---

**2.** An "option to purchase real property" is a "contract by which an owner of realty enters an agreement with another allowing the latter to buy the property at a specified price within a specified time, or within a reasonable time in the future, but without imposing an obligation to purchase upon the person to whom it is given." Black's Law Dictionary at 1204 (9th Ed.2009). A "right of first refusal" is a "potential buyer's contractual right to meet the terms of a third party's higher offer." Black's Law Dictionary at 1439 (9th Ed.2009). Although the Black's Law Dictionary definition of "right of first refusal" includes a common condition precedent ("a third party's higher offer"), which the Dissent also quotes <u>Corbin on Contracts</u> for, the plain language of the instant ROFR included no such condition. *See* Concurrence/Dissent at 361, 300 P.3d at 1020. Instead, it conditioned sale on "terms and conditions provided by the Licensor," not terms and conditions set by a third party's offer.

ROFR did not survive into the holdover period (as requested in PPGC's Counterclaim), and expunge Kutkowski's Notice of Pendency of Action. Kutkowski, on the other hand, requested that the circuit court declare that the ROFR was enforceable and order specific performance of its terms.

The circuit court[3] ruled on June 1, 2007. As to the first issue, it denied PPGC's counterclaim for a declaration that the ROFR did not survive into the holdover period, stating "that pursuant to paragraph 22 of the License Agreement, the first right of refusal continues during the period of time Kutkowski holds over under a month to month tenancy." As to the second issue, the circuit court dismissed Kutkowski's claim for specific performance under the First Amended Complaint, stating:

> [T]he sale of the one thousand forty (1040) acre parcel of land identified by TMK (4) 5–3–06–014 by Princeville Corporation to [PPGC] did not constitute a decision to sell the premises described in the License Agreement (the "Premises"), and, therefore, the first right of refusal granted thereby was not triggered by that event.

The circuit court subsequently entered final judgment, Kutkowski timely appealed, and PPGC timely cross-appealed. According to the parties, a separate ejectment action initiated by PPGC against Kutkowski has been stayed pending the outcome of this appeal.

## C.  ICA Appeal

On appeal, Kutkowski raised as his sole Point of Error the following: "The Circuit Court erred when it denied equitable relief to Kutkowski because it held that the sale of the Master Parcel did not constitute a 'decision to sell' the Premises which would trigger Kutkowski's right of first refusal under paragraph 2 of the Agreement." Kutkowski also argued that PPGC's attempt to eliminate

Kutkowski's ROFR via a proposed amendment to the License Agreement evidenced PPGCs "wrongful intent" to defeat Kutkowski's ROFR. Therefore, he requested that specific performance be ordered and that the circuit court determine the fair market value of the half-acre parcel. In the alternative, he requested that the sale to PPGC be enjoined or cancelled and the entire property reconveyed.

In its Answering Brief, PPGC pointed out that the "wrongful intent" argument was raised for the first time on appeal. PPGC argued that Kutkowski needed a "reality check," as the sale of the Master Parcel was not wrongfully intended to frustrate the ROFR over a half-acre parcel. PPGC also pointed out that Kutkowski requested fair market valuation, an injunction, or a cancellation of the sale to PPGC for the first time on appeal as well. The bottom line, to PPGC, was that at the trial level, the focus was never on whether PPGC defeated Kutkowski's ROFR and what remedies should be available for the breach, but whether the sale of the Master Parcel triggered the ROFR in the first place. PPGC also argued that the ROFR provision was void because it is illegal to offer to sell an unsubdivided parcel under the Kauai Subdivision Ordinance.

PPGC also filed a cross-appeal challenging the circuit court's conclusion that the ROFR survived into the holdover period.

The ICA issued a published opinion affirming the circuit court. *Kutkowski v. Princeville Prince Golf Course, LLC*, 128 Hawai'i 344, 364, 289 P.3d 980, 1000 (2012). As to the first issue, a majority[4] of the ICA first held that the ROFR survived into the holdover period.[5] 128 Hawai'i at 345, 289 P.3d at 981. As to the second issue (whether the ROFR was triggered by the sale of the Master Parcel), the ICA further held:

---

**3.**  The Honorable Kathleen N.A. Watanabe presided.

**4.**  *See* 128 Hawai'i at 364–66, 289 P.3d at 1000–02 (Ginoza, J., concurring).

**5.**  PPGC did not file its own Application for Writ of Certiorari on the holdover issue, but it did

challenge the ICA majority's analysis of the holdover issue in its Response to Kutkowski's Application for Writ of Certiorari. We do not believe the ICA erred in its analysis of the holdover issue under the facts of this case, so we decline to exercise plain error review pursuant to Hawai'i Rules of Appellate Procedure Rule 40.1 to address this issue.

(4) [G]enerally, the desire to sell a large tract of land may not be taken as a manifestation of the seller's intention or desire to sell a small, undivided[ ] parcel contained within it, so as to convert a right of first refusal on the smaller parcel into an exercisable option for its purchase; (5) Kutkowski's requested relief of specific performance would require a wholesale reformation of the parties' agreement and, *inter alia,* require judicial establishment of a price term, which would directly contradict the bargained-for rights of the parties; (6) Hawai'i courts will not allow a property owner and a purchaser to, in effect, destroy a bargained-for right of first refusal before its expiration and, in many circumstances, would order an injunction of a prospective sale or the rescission and/or reconveyance of a completed sale, in order to maintain the status quo, preserving a lessee's right of first refusal until its exercise, waiver, or termination at the expiration of the lease; and (7) under the circumstances of this case, including that the lessee holding the right of first refusal did not seek to enjoin or rescind the sale or a large undivided parcel of land that neither triggered nor destroyed a right of first refusal applicable to a small portion of that land, the requested relief of specific performance of the right of first refusal was properly denied.

128 Hawai'i at 345–46, 289 P.3d at 981–82.

The ICA first rejected Kutkowski's point of error that the sale of the Master Parcel triggered his ROFR and that he was entitled to specific performance, concluding that the License Agreement's reference to "the premises" in the ROFR provision meant the half-acre parcel and not the 1040–acre parcel, and there was no decision to sell just the half-acre parcel. 128 Hawai'i at 359, 289 P.3d at 995. The ICA then noted that the cases Kutkowski cited in support reflected the minority view. 128 Hawai'i at 360, 289 P.3d at 996 (citing *Wilber Lime Products, Inc. v. Ahrndt,* 268 Wis.2d 650, 673 N.W.2d 339 (Wis.Ct.App.2003); *Brenner v. Duncan,* 318 Mich. 1, 27 N.W.2d 320 (1947); *Berry–Iverson Co. v. Johnson,* 242 N.W.2d 126 (N.D. 1976); and *Pantry Pride Enters., Inc. v. Stop & Shop Cos.,* 806 F.2d 1227 (4th Cir.1986)).

The ICA then adopted the majority view, reflected in the cases cited by PPGC, for the following statement of law:

[T]he holder of the option of first refusal on a portion only of a larger tract may not obtain specific performance of his option so as to require conveyance to him of the whole property the owner desires to sell [.] Nor may the property owner, by an acceptance of an offer to sell the whole, be compelled by judicial decree to dispose of the optioned part separately from the property as a whole. An attempt to sell the whole may not be taken as a manifestation of an intention or desire on the part of the owner to sell the smaller optioned part so as to give the optionee the right to purchase the same[.]

128 Hawai'i at 361, 289 P.3d at 997 (citing *Aden v. Estate of Hathaway,* 162 Colo. 311, 427 P.2d 333, 334 (1967) (quoting *Guaclides v. Kruse,* 67 N.J.Super. 348, 170 A.2d 488, 493 (N.J.Super.Ct.App.Div.1961))).

The ICA reasoned, however, that the lessee's ROFR should at least be preserved until the termination of that right; in such a case, the remedy is not specific performance but an injunction on the sale of the larger parcel until the termination of the lessee's ROFR in order to maintain the status quo ante. 128 Hawai'i at 361–62, 289 P.3d at 997–98 (citing *Guaclides,* 170 A.2d at 497; *Chapman v. Mut. Life Ins. Co.,* 800 P.2d 1147 (Wyo.1990); *Ollie v. Rainbolt,* 669 P.2d 275 (Okla.1983); *Gyurkey v. Babler,* 103 Idaho 663, 651 P.2d 928 (1982)). In this case, however, the ICA concluded that an injunction or rescission of the sale were not available as remedies, because Kutkowski never sought those remedies prior to the sale's closing date. 128 Hawai'i at 363–64, 289 P.3d at 999–1000.

In any event, the ICA noted, PPGC "expressly assumed and in effect acknowledged that Kutkowski's rights under the License Agreement survived the sale of the Master Parcel" by entering into the Assumption Agreement with its predecessor, Princeville Corporation. 128 Hawai'i at 364, 289 P.3d at 1000. Under the facts of this case, the ICA considered Kutkowski's ROFR to remain in-

tact throughout the holdover period as against PPGC, who must offer the half-acre parcel for sale to Kutkowski, on PPGC's terms and conditions, if PPGC decides to sell the half-acre parcel while Kutkowski remains a holdover tenant. *Id.* The ICA ultimately affirmed the circuit court's judgment. *Id.*

## III. Arguments on Certiorari

On certiorari, Kutkowski argues that the ICA gravely erred in (1) affirming the circuit court's Final Judgment; (2) finding that Kutkowski's ROFR was not triggered upon the sale of the Master Parcel to PPGC; (3) finding that Kutkowski's requested relief of specific performance would require a wholesale reformation of the parties' agreement; and (4) denying any equitable relief because Kutkowski did not seek to enjoin or rescind the sale of the larger parcel of which the leased premises were a part.

To Kutkowski, the plain meaning of "sell" in the ROFR provision meant the sale of the Property, regardless of whether it was included in a larger sale. Kutkowski also argues that the ICA's decision to not provide him any equitable relief has put him in a different position than he was in status quo ante, because now he has a new landlord. Kutkowski seeks equitable relief principally in the form of compelling PPGC to offer him the Property for sale, but he argues he is also entitled to an injunction or a rescission of the sale because PPGC violated the terms of the ROFR.

PPGC counter-argues that Kutkowski's focus on the word "sell" in the ROFR provision is wrong; the operative words in the ROFR provision were "In the event the Licensor decides to sell the premises," and the ICA correctly interpreted the phrase "the premises" to mean just the half-acre parcel. Thus, according to PPGC, although the Property changed hands, the ROFR itself was not triggered upon the sale of the Master Parcel. PPGC also counter-argues that Kutkowski stipulated to the change of landlord and amended his Complaint accordingly. Lastly, PPGC argues that the ICA could not have granted equitable relief to Kutkowski because performing the terms of the ROFR was legally impossible.

## IV. Discussion

■ We disagree with the ICA's adoption of the majority rule in the instant case, and, under the specific circumstances of this case, prefer instead to adopt the minority rule. Our established rules of contract construction would resolve the interpretation of the ROFR along the lines of the minority rule, which respects the parties' intent in assenting to the ROFR.

### A. The Majority and Minority Rules

The majority rule holds that the sale of the larger parcel to a third party does not manifest the seller's intent to sell just the smaller parcel. *See Guaclides,* 170 A.2d at 493 ("An attempt to sell the whole may not be taken as a manifestation of an intention or desire on the part of the owner to sell the smaller optioned part so as to give the optionee a right to purchase the same."); *Aden,* 427 P.2d at 334 (following *Guaclides* to hold, "[The deceased lessor's] expressed intent was to sell in one package a very much larger tract of ground and the contract which expresses this intent, in itself, precludes the conclusion that [he] had any intention to sell the smaller tract in a transaction other than as an included portion of the contract for the whole tract."); *Straley v. Osborne,* 262 Md. 514, 278 A.2d 64, 69 (1971) ("[T]he contemplation (or even the acceptance) by the lessor of an offer for the larger tract is no manifestation of an intention on his part to sell the smaller (leased) portion separately."); *Chapman,* 800 P.2d 1147, 1150 (Wyo.1990) ("By entertaining [the buyer's] offer for the larger parcel, [the lessor] did not express an intention to sell [the smaller parcel], which intention is the stimulus that would breath[e] life into the [lessee's] preemptive right and provide grounds for specific performance."); *Advanced Recycling Systems, LLC v. Southeast Props. L.P.,* 787 N.W.2d 778, 784 (S.D.2010) ("There was no evidence ... that [the lessor] entertained a third-party offer to purchase the leased premises apart from the development. Consequently [the lessee's] right of first refusal did not ripen into an enforceable option contract to purchase the leased premises.") (citation omitted).

Under the majority rule, a lessor holding a ROFR over a smaller part cannot be granted specific performance of the ROFR, because the court will not order the seller to sell the part separate from the whole. *See Guaclides,* 170 A.2d at 493 ("Nor may the property owner, by an acceptance of an offer to sell the whole, be compelled by judicial decree to dispose of the optioned part separately from the property as a whole."); *C & B Wholesale Stationery v. S. De Bella Dresses, Inc.,* 43 A.D.2d 579, 580, 349 N.Y.S.2d 751, 754 (N.Y.App.Div.1973)("Specific performance is not available to the [lessee with a ROFR], since the lessor had no intention to sell only the leased premises."); *Ollie,* 669 P.2d at 281 (in the context of stock sales over which stock owners had a ROFR over less than all of the stocks sold to a third party, holding, "An owner should not be compelled to sell property on terms and conditions to which he has not agreed or which he has not intended to accept."); *Chapman,* 800 P.2d at 1151 ("There was no third party offer that established a definite price for [the smaller parcel]. Consequently, the [lessees'] right [of first refusal] has not been converted into an option and they cannot obtain specific performance.")

However, the "owner of the whole may not impair or destroy the preemptive right to purchase the part by a sale or agreement to sell the whole to some third person." *Guaclides,* 170 A.2d at 494. To protect the holder of the ROFR, the remedy is an injunction of the sale, or rescission of the sale and reconveyance of the larger parcel to await the expiration of the terms of the ROFR. *See Guaclides,* 170 A.2d at 495 (enjoining the sale of the larger parcel to a third party to accord the right of first refusal to the lessee); *Myers v. Lovetinsky,* 189 N.W.2d 571, 576 (Iowa 1971) (following *Guaclides* to hold that, while specific performance is not available, an injunction on a sale that has not consummated, or a reconveyance of property pursuant to a sale that has consummated, are available remedies); *C & B Wholesale Stationery,* 43 A.D.2d at 580, 349 N.Y.S.2d at 754 (reconveying larger parcel back to lessor and enjoining a further sale of the smaller parcel without first giving the lessee an opportunity exercise its ROFR over the smaller

parcel); *Gyurkey,* 651 P.2d at 934 ("The proper remedy in this case is to enjoin the owners from selling Lot 13 until they receive an acceptable *bona fide* offer for Lot 13 unrelated to the sale of any other property, and give [the lessee of Lot 13] the appropriate notice and opportunity to meet such offer pursuant to the right of first refusal."); *Ollie,* 669 P.2d at 281 (in the context of stock sales, holding, "The remedy properly afforded in this case calls upon the court to enjoin the selling shareholders from transferring their ownership in the preemption-encumbered stock until they have receive a *bona fide* offer that is unrelated to any other stock and have given the plaintiffs appropriate notice with opportunity to meet that offer in conformity to the right of first refusal."); *Saab Enterprises, Inc. v. Wunderbar,* 160 A.D.2d 931, 932, 554 N.Y.S.2d 657, 658 (N.Y.App.Div. 1990) (affirming a rescission of the sale of a larger tract because part of the tract was subject to the lessee's ROFR); *Chapman,* 800 P.2d at 1152 (enjoining the lessor from selling the smaller parcel "except in response to a bona fide offer for [just the smaller parcel], and only after presenting the complete terms of the offer to the [lessees] and giving them adequate opportunity to exercise their preemptive right.").

One court, however, afforded the lessee no remedy, concluding that "there was no evidence of any wrongful intent" behind the seller's decision to sell a larger tract encompassing a smaller tract burdened by the lessee's ROFR. *Crow–Spieker #23 v. Robert L. Helms Constr. & Dev. Co.,* 103 Nev. 1, 731 P.2d 348, 350 (1987).

Further, under the majority rule, the right of first refusal over the smaller parcel survives the sale of the larger parcel, and subsequent third party buyers with notice purchase subject to the right of first refusal. *See Atlantic Refining Co. v. Wyoming Nat'l Bank,* 356 Pa. 226, 51 A.2d 719, 722 (1947)("[T]he bank's offer of the [larger parcel] as an entirety at the auction sale did not operate to impair or destroy [the lessee's] option to purchase [the smaller parcel]."); *Guaclides,* 170 A.2d at 496–97 (noting that third party buyer with notice would buy the

larger parcel subject to the existing lessee's ROFR over the smaller parcel).

■ The minority rule, on the other hand, holds that the sale of the larger parcel to a third party does manifest the seller's intent to sell the smaller parcel as well. *Berry–Iverson Co.*, 242 N.W.2d at 134 ("[A]n intention to sell a larger parcel of land ... is evidence of an intention to sell the leased premises.... To conclude otherwise would permit an owner and prospective purchaser to, in effect, destroy a bargained-for purchase preemption before the expiration of the term for which such preemption was obtained."); *Wilber Lime Prods.*, 673 N.W.2d at 343 ("[T]he sale of the entire 180–acre farm to [a third party] triggered [the lessee's] right of first refusal to the twenty-five acres.... The twenty-five acres were sold, albeit as part of a package deal. [The lessee] should therefore have had the right to purchase the land.")

According to the minority rule, a sale of the larger parcel without honoring the right of first refusal over the smaller parcel constitutes a breach, for which courts possess the equitable discretion to order specific performance as the remedy. *See Brenner*, 27 N.W.2d at 322 ("[T]he lease imposed upon [the lessor] a duty, before selling ... to fix a specific sum as the amount as which she was willing to sell the [smaller parcel] and to afford to [the lessees their ROFR]. Her failure to do so constituted a breach of contract."); *Berry–Iverson Co.*, 242 N.W.2d at 131 ("The owners, by failing to provide [the lessee] with an opportunity to exercise its right of first refusal with reference to the sale of the four-acre tract of land, breached their contractual agreement by selling the 390.43–acre farm containing the four-acre tract to the [buyers]."); *Thomas & Son Transfer Line v. Kenyon, Inc.*, 40 Colo.App. 150, 574 P.2d 107, 112 (1977) (rejecting *Aden* and ordering specific performance when lessor sold 14 lots to buyer, disregarding a lessee's ROFR over 10 of those lots); *Pantry Pride Enters., Inc.*, 806 F.2d at 1229–30 (distinguishing case from the majority rule because case involved separate valuation of leasehold and equipment interests, which the lessor attempted to sell as a package deal in

derogation of the lessee's ROFR over just the lease).

Some courts allow for judicial determination of the purchase price for the smaller parcel. *See Brenner*, 27 N.W.2d at 322; *Berry–Iverson*, 242 N.W.2d at 135–36; *Wilber Lime Prods.*, 673 N.W.2d at 343 (remanding case to trial court for a determination of the fair market value of the smaller tract of land so that the lessee would have the opportunity to exercise his ROFR). One court left the purchase price to the parties but ordered specific performance of the ROFR nonetheless. *Pantry Pride Enters.*, 806 F.2d at 1231–32.

The majority rule presumes the lessor did not intend to sell a smaller parcel included in a sale of a larger parcel, never triggering the ROFR; the minority rule recognizes that the smaller parcel is in fact included upon the sale of the larger parcel, evidencing the lessor's intent to sell the smaller parcel, triggering the ROFR. As applied to the specific circumstances of this case, the minority rule accords primacy to the parties' intent in assenting to the ROFR in the first place, and we expressly adopt it here. The majority rule renders ROFR's over smaller parcels illusory upon the lessor's decision to include the smaller parcel as part of a larger property sale to a third party, which does not enforce the parties' bargain for a ROFR.

### B. Hawaiʻi Law on Contract Interpretation

■ Further, the primacy of the parties' intent underlying the minority rule is in line with our case law on contract interpretation. "In construing a lease we must avoid an unreasonable interpretation if that can be done consistently with the tenor of the agreement and choose the most obviously just interpretation as the presumed intent." *Broida v. Hayashi*, 51 Haw. 493, 496, 464 P.2d 285, 288 (1970).

Interpretation of the parties' intent begins with the language the parties use. For the reader's convenience, the ROFR provision is reproduced below:

2. Option to Purchase: Licensor [Princeville Corporation] expressly reserves the

right to sell the licensed premises during the term of this license and to place such signs and notices on or about the premises for such purpose, subject only to the rights of the Licensee [the Kutkowskis] contained herein. In the event Licensor decides to sell the premises, it shall be first offered to Licensee on terms and conditions provided by Licensor; PROVIDED, HOWEVER, that Licensee shall have at all times faithfully and punctually performed all of the covenants and conditions of this agreement on the part of Licensee to be performed. Licensee shall have sixty (60) days to accept the Licensor's offer or make a counter offer, PROVIDED [sic], HOWEVER, that if no sales contract is executed within one hundred twenty (120) days after Licensor's initial offer, (1) Licensor shall be free to offer the premises for sale to the general public and (2) this license agreement shall be automatically amended with occupancy to continue on a month to month term. Should the premises be thereafter sold during the term of the month to month license, Licensor shall give Licensee forty-five (45) days prior notice of termination of this license, upon which Licensee shall relinquish all rights hereunder.

To the ICA, the term "the premises" in the second sentence's phrase, "In the event Licensor decides to sell the premises," referred only to the half-acre parcel. 128 Hawai'i at 359, 289 P.3d at 995. To the ICA, the decision to sell the 1040–acre parcel was not a decision to sell just the half-acre parcel. *Id.* Because PPGC's Master Parcel was undivided, however, the decision to sell it necessarily meant that the Property would be swept up in the sale. The decision to sell the whole was a decision to also sell the part; the

ROFR was thus triggered.[6] An interpretation otherwise would render the ROFR meaningless.

The minority rule, as applied to the circumstances of this case, gives effect to the parties' agreement. *Berry–Iverson Co.*, 242 N.W.2d at 134 ("To conclude [that a decision to sell a larger parcel was not a decision to sell a smaller parcel within it] would ... destroy a bargained-for purchase preemption before the expiration for which such preemption was obtained.") *See also* Restatement (Second) of Contracts § 203 (1981) ("In the interpretation of a promise or agreement or a term thereof, ... an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect[.]") *See also Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 110, 839 P.2d 10, 25 (1992); *Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111 Hawai'i 286, 297, 141 P.3d 459, 470 (2006).

Thus, the decision to sell the Master Parcel was a decision to "sell the premises." Under the terms of the ROFR, Princeville Corporation was required to "first offer[ ] [the premises] to [Kutkowski] on terms and conditions provided by the Licensor[.]" In this case, Princeville Corporation's decision to sell the premises to PPGC occurred at least by July 2004, when the sale of the Master Parcel commenced. It is undisputed that Princeville Corporation did not first offer the premises to Kutkowski.[7] In fact, rather than honor its obligations under the ROFR, Princeville Corporation instead sought to amend the License Agreement, while the sale of the Master Parcel was in

---

6. Therefore, we do not disagree with the Dissent (or the ICA) that "the premises" in the ROFR referred to just the half-acre parcel. As a practical matter, however, there is no way the sale of the undivided 1040–acre parcel would not include the half-acre parcel.

7. The Dissent points to Kutkowski's Declaration, which stated that the Licensor did not first sell the half-acre to Kutkowski, as evidence failing to "indicate whether the parties intended, at the time of entering into the license agreement, to trigger the right of first refusal upon Princeville Corporation's intent to sell the master parcel."

Dissent at 363 n. 6, 300 P.3d at 1022 n. 6. Kutkowski's Declaration, however, merely averred to the fact (which PPGC does not dispute) that the Licensor never offered to sell the half-acre to Kutkowski. Respectfully, such a declaration was not used (and in this case, should not be used, where neither party argues that the ROFR is ambiguous) as a source of contractual intent. Contractual intent is ordinarily found within the four corners of the agreement. *See Found. Int'l, Inc. v. E.T. Ige Constr., Inc.*, 102 Hawai'i 487, 496 n. 14, 78 P.3d 23, 32 n. 14 (2003).

progress, to eliminate Kutkowski's ROFR. On his own initiative, Kutkowski attempted to exercise what he understood to be his "option" by offering to buy the half-acre parcel for $250,000. The offer was rejected.

In light of this sequence of events, the ICA's adoption of the majority rule, which holds that the ROFR was not triggered, in effect, also relieved PPGC of its duty of good faith and fair dealing in performing the contract. *See* Restatement (Second) of Contracts § 205 (1981)("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."); *Young v. Allstate Ins. Co.*, 119 Hawai'i 403, 427, 198 P.3d 666, 690 (2008)("[E]very contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement.") (citation omitted); *Simmons v. Puu*, 105 Hawai'i 112, 119, 94 P.3d 667, 674 (2004) (stating that Hawai'i courts recognize that parties to a contract have a duty of good faith and fair dealing in performing contractual obligations).

To further disclaim any obligation to perform the ROFR in good faith and fair dealing, PPGC argues that performance of the contract was legally impossible in any event, because it could not have subdivided the half-acre parcel in an area zoned for agricultural use, where minimum lot size is five acres. Thus, PPGC argues, Kutkowski is not entitled to specific performance. Kutkowski cited to the County of Kaua'i, Kauai County Code, § 9–3.1 (requiring minimum lot size to conform to the provisions of the Kauai Comprehensive Zoning Ordinance, respectively); the County of Kaua'i, Comprehensive Zoning Ordinance, § 8–7.4(b)(2)(generally requiring a parcel of over 75 acres to be subdivided into smaller parcels no larger than five acres); and *Whitlow v. Jennings*, 40 Haw. 523, 532 (Haw. Terr.1954) ("[A]n agreement to sell in violation of the [subdivision] statute is void[.]")

PPGC's argument misses the point of the ROFR, which was for the Licensor to "offer[ to sell the premises] to Licensee on terms and conditions provided by the Licensor," not to outright sell an unsubdivided half-acre parcel to the Licensee.[8]  The meaning of the phrase "terms and conditions provided by the Licensor" could have included the purchase price, possibly taking into account the cost of seeking a subdivision of the half-acre parcel (including attempts to grandfather in the subdivision of the smaller parcel or attempts to seek a variance from the subdivision ordinance), or attempts to create a condominium property regime, or other attempts to effectuate the ROFR. The factual record is undeveloped as to the current state of the property and the options available for carving out the half-acre parcel. The point is that PPGC could have, but did not, offer the half-acre, or any other parcel, to Kutkowski for sale on terms and conditions set by PPGC.

> [T]he right of private contract is no small part of the liberty of the citizen, and ... the usual and most important functions of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy.... [I]f there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by courts of justice.

*Robinson v. Thurston*, 23 Haw. 777, 790–91 (Haw. Terr.1917) (Robertson, C.J., dissenting), rev'd 248 F. 420, 424 (9th Cir.1918) (adopting Chief Justice Robertson's dissent).

This court does not attempt to set forth the path that PPGC must take in performing the ROFR. It merely construes the ROFR to presume that there existed "terms and conditions" acceptable to the Licensor that would allow it to offer the premises to Kutkowski for sale, pursuant to its duty to perform the

---

**8.**  The ICA also recognized that the ROFR gave the Licensor a "right to determine the terms and conditions of any sale, including the purchase price and the satisfaction of any conditions." 128 Hawai'i at 360, 289 P.3d at 996.  We believe that the purchase price is PPGC's to decide. Therefore, we disagree with Kutkowski that the circuit court should set a price term for the half-acre parcel on remand.

ROFR in good faith and fair dealing. Otherwise, the ROFR would have been illusory. We decline to presume that the parties intended to insert a meaningless and ineffectual ROFR into their License Agreement.

Furthermore, a presumption that these terms and conditions existed is a reasonable interpretation, when construing the ROFR against the drafter, who would have been in a better position to know which options were available to it for carving out the half-acre. *See* Restatement (Second) of Contracts § 206 (1981) ("In choosing among the reasonable meanings of a promise or agreement of a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."); *Amfac*, 74 Haw. at 110 n. 5, 839 P.2d at 25 n. 5. This rule of interpretation is especially just where parties are of unequal sophistication and bargaining power, as Kutkowski and Princeville Corporation were in this case. *See id.; see also Calvin v. Limco*, 60 Haw. 154, 158, 587 P.2d 1216, 1219 (1978) ("As between [a corporate developer party] and [individual] appellees, [the corporate developer] must be regarded as the party by whom the [contracts] were prepared. The trial court concluded that ambiguities in the [contracts] should be resolved against [the corporate developer], as the preparer of the agreements. We agree.") (citations omitted) Alternatively, if the lessor had intended to exclude the sale of any more than the half-acre parcel as a triggering event under the ROFR, it could have drafted the ROFR to specify that.[9]

### C. The Remedy

■ Having concluded that the ROFR was triggered by Princeville Corporation's decision to sell the Master Parcel in 2005, we now must determine the remedy available to Kutkowski. We agree with the ICA that Kutkowski's ROFR continues to remain intact throughout the holdover period as against PPGC, who has assumed the rights and obligations once held by Princeville Corporation with regard to Kutkowski. In effect, PPGC bought the Master Parcel subject to Kutkowski's ROFR, which survives so long as Kutkowski remains a holdover tenant.[10] Therefore, the appropriate remedy is specific performance: the Licensor having triggered the ROFR through its decision to sell the premises, PPGC (as the Licensor's successor under the Assumption Agreement) must offer the Property for sale to Kutkowski, pursuant to the analysis in this opinion.

### V. Conclusion

We agree with the ICA that Kutkowski's ROFR continues into the holdover period. The ROFR can be presently exercised because Princeville Corporation's decision to sell the Master Parcel triggered its (and now PPGC's assumed) obligation to perform. We therefore reverse the ICA's Judgment on Appeal and remand this case to the circuit court for further proceedings consistent with this opinion.

Opinion by RECKTENWALD, C.J., concurring in part and dissenting in part.

I respectfully dissent. In my view, Robert Kutkowski's right of first refusal on the leased, half-acre parcel was not triggered by the sale of the undivided, 1,040–acre master parcel to Princeville Prince Golf Course, LLC (PPGC). I therefore respectfully disagree with the majority's determination that PPGC must offer to sell the property to

9. The Dissent argues that, if the "parties [could have] expressly contract[ed] for this result," then it is not the case that the ROFR would be meaningless if interpreted to exclude the sale of the master parcel as a triggering event. Concurrence/Dissent at 362 n. 4, 300 P.3d at 1021 n. 4. Respectfully, the Dissent conflates two separate contract interpretation arguments made within this opinion. We first noted that we interpret contracts to avoid a meaningless result; in so doing, we recognized the practical reality that a sale of the undivided 1040–acre parcel necessarily involves the sale of the half-acre parcel within

it. We next noted that contracts are construed against the drafter, and the Licensor (as drafter, not the parties in concert) could have avoided our reading of the ROFR to avoid a meaningless result by specifying that the sale of the 1040–acre parcel would not trigger the sale of the half-acre parcel.

10. The majority and Concurrence/Dissent agree that the ROFR remains intact and enforceable during Kutkowski's holdover tenancy. Concurrence/Dissent at 362 n. 5, 300 P.3d at 1021 n. 5.

Kutkowski.[1] Accordingly, I would affirm the judgment of the Intermediate Court of Appeals.

To briefly recount the facts, Kutkowski was a holdover tenant on a half-acre parcel of land, which was part of an undivided, 1,040–acre master parcel owned by Princeville Corporation. Kutkowski's license agreement with Princeville Corporation contained the following right of first refusal provision: "In the event Licensor [Princeville Corporation] decides to sell the premises, it shall be first offered to Licensee on terms and conditions provided by Licensor[.]" Princeville Corporation eventually sold the master parcel to PPGC and, pursuant to the terms of the sale, PPGC assumed Princeville Corporation's obligations under the license agreement. Kutkowski argues that his right of first refusal on the half-acre parcel was triggered by the sale of the master parcel to PPGC and, accordingly, seeks specific performance of his right of first refusal or, alternatively, an injunction or rescission of the sale.

A majority of other jurisdictions have concluded, in similar circumstances, that a decision to sell a larger tract of land does not trigger a right of first refusal on a smaller, included parcel. *See, e.g., Aden v. Estate of Hathaway,* 162 Colo. 311, 427 P.2d 333, 334 (1967) ("An attempt to sell the whole may not be taken as a manifestation of an intention or desire on the part of the owner to sell the smaller optioned part so as to give the optionee the right to purchase the same[.]") (citation omitted); *see also Guaclides v. Kruse,* 67 N.J.Super. 348, 170 A.2d 488, 494 (N.J.Super.Ct.App.Div.1961) ("We hold that an option of first refusal as to a portion only of a tract may be exercised only if the owner determines to sell that portion for a separate consideration; and the attempted sale of the whole tract for a single price is no indication of an intention or desire to sell the portion alone."). These holdings are founded on the principle that a right of first refusal does not ripen into an option to purchase the property[2] until "the condition precedent of the owner's intention to sell is met[.]" *Chapman v. Mutual Life Ins. Co. of New York,* 800 P.2d 1147, 1150 (Wyo.1990). The requisite intent is not manifested where the owner intends to sell only the larger tract of land and has expressed no intention to sell the smaller parcel alone. *Straley v. Osborne,* 262 Md. 514, 278 A.2d 64, 69–70 (1971); *Crow–Spieker No. 23 v. Robert L. Helms Constr. & Dev. Co.,* 103 Nev. 1, 731 P.2d 348, 350 (1987); *see also* 3 Corbin on Contracts § 11.3 at 470 ("[T]he right is subject to an agreed condition precedent, typically the owner's receipt of an offer from a third party and the owner's good faith decision to accept it.").

Here, the license agreement between Kutkowski and Princeville Corporation afforded Kutkowski a license to occupy and use the "premises." The "premises" were explicitly defined by the agreement as the half-acre parcel located on Anini Road. Thus, the scope of the license agreement encompassed only Kutkowski's half-acre parcel, and did not extend to the master parcel. *See Hi Kai Inv., Ltd. v. Aloha Futons Beds & Waterbeds, Inc.,* 84 Hawai'i 75, 78, 929 P.2d 88, 91 (1996) ("Absent an ambiguity, contract terms should

---

**1.** However, I concur in the majority's conclusion that the right of first refusal carried over into Kutkowski's holdover tenancy, and that performance of the right of first refusal is not legally impossible. Majority opinion at 353 n.5, 359–60, 300 P.3d at 1012 n. 5, 1018–19.

**2.** A right of first refusal differs substantially from an option to purchase. 3 Eric Mills Holmes, Corbin on Contracts § 11.3 at 468 (Joseph M. Perillo, ed., rev. ed.1996) (noting that rights of first refusal "are closely related to the purposes of option contracts and yet are very dissimilar in the legal relations of the parties who make them"). A right of first refusal is defined as "[a] potential buyer's contractual right to meet the terms of a third party's higher offer." Black's Law Dictionary 1439 (9th ed.2009). In contrast, an option to purchase real property is defined as "[a] contract by which an owner of realty enters an agreement with another allowing the latter to buy the property at a specified price within a specified time, or within a reasonable time in the future, but without imposing an obligation to purchase upon the person to whom it is given." *Id.* at 1204.

Although the right of first refusal in the instant case was contingent on an intent to sell the premises on terms and conditions set by Princeville Corporation itself, rather than by a third-party offer, this did not alter the legal relations of the parties. Kutkowski's right of first refusal remained subject to the condition precedent of Princeville Corporation's decision to sell the premises.

be interpreted according to their plain, ordinary, and accepted sense in common speech.").

Moreover, the license agreement reserved to Princeville Corporation the right to sell the premises, and to place signs on the premises relating to the sale, but afforded Kutkowski a right of first refusal in the event Princeville Corporation "decide[d] to sell the premises[.]"[3] The license agreement does not contain an express or implied agreement requiring Princeville Corporation to offer the premises for sale to Kutkowski in the event it "decide[d] to sell" the master parcel. Kutkowski has not alleged that Princeville Corporation received any offers to separately purchase the half-acre parcel, nor that it intended to sell the half-acre parcel separately. In these circumstances, I would conclude that Kutkowski's right of first refusal was not triggered.

This analysis does not render the right of first refusal meaningless. *See* majority opinion at 358, 300 P.3d at 1017. Unless and until the owner of the burdened parcel manifests its intent to sell the property, the right of first refusal "remains in an unripened or suspended state, awaiting the energizing spark provided when the condition precedent of intent and offer is met." *Chapman*, 800 P.2d at 1152. In this sense, a right of first refusal may *never* ripen into an option to purchase the property—if the owner never manifests its intent to sell the property during the term of the agreement, the holder of the right cannot compel a sale. 3 Corbin on Contracts, § 11.3 at 481 ("[Owner's] promise

to [Buyer] is not 'illusory,' although [Owner] has a choice … between alternatives—the very limited choice between not selling to anybody or making an offer to [Buyer]."). Thus, Kutkowski could not have known, at the time he entered into the license agreement, whether the right of first refusal would ripen into an option to purchase during the term of the agreement.[4]

A minority of other jurisdictions have held that a right of first refusal is triggered in these circumstances on the ground that, "[t]o conclude otherwise would permit an owner and prospective purchaser to, in effect, destroy a bargained-for purchase preemption before the expiration of the term for which such preemption was obtained." *Berry–Iverson Co. v. Johnson*, 242 N.W.2d 126, 134 (N.D.1976). However, no such concerns are implicated in the instant case. As the majority opinion acknowledges, PPGC purchased the master parcel subject to Kutkowski's right of first refusal. Majority opinion at 28. Accordingly, Kutkowski's right of first refusal has not been destroyed, but instead remains enforceable against PPGC for the remainder of his holdover tenancy.[5]

Nevertheless, the majority opinion concludes that triggering the right of first refusal best effectuates the intent of the parties in the "specific circumstances of this case." Majority opinion at 357, 300 P.3d at 1016. In so doing, the majority relies primarily on the language of the right of first refusal. Majority opinion at 357–58, 300 P.3d at 1016–17. To reiterate, that provision states: "In the

3. Kutkowski's counsel acknowledged during oral argument that, "an ordinary person looking at that would say.... [y]ou're not going to put out a sign on our little half-acre parcel to sell your 1,040–acre resort. You're talking about putting out a sign to sell my half-acre parcel.... To me that means the sign out to sell that property not to sell the whole resort." Oral Argument, Hawai'i Supreme Court, at 49:15–49:52 (Oct. 18, 2012), available at http://www.courts.state.hi.us/courts/oral_arguments/archive/oasc28826.html.

4. The majority notes that Princeville Corporation could have drafted the right of first refusal provision to explicitly exclude the sale of the master parcel as a triggering event. Majority opinion at 361, 300 P.3d at 1020. However, the majority also concludes that the right of first refusal would be meaningless if interpreted to exclude

the sale of the master parcel as a triggering event. *See* majority opinion at 358, 300 P.3d at 1017. Respectfully, if it is permissible for the parties to expressly contract for this result, then the result cannot be meaningless.

5. Accordingly, I would hold that neither injunction nor rescission of the sale of the master parcel would be an appropriate remedy in this case, both because Kutkowski did not seek those remedies, and because the right of first refusal remains intact and enforceable in the event PPGC intends to sell the half-acre parcel during Kutkowski's tenancy. Additionally, there is no evidence that Princeville Corporation, in selling the master parcel to PPGC, acted with a wrongful intent to defeat Kutkowski's right of first refusal.

event Licensor [Princeville Corporation] decides to sell the premises, it shall be first offered to Licensee on terms and conditions provided by Licensor[.]" Respectfully, nothing in this provision contains an express or implied agreement requiring Princeville Corporation to offer the premises for sale to Kutkowski prior to the sale of the master parcel.

Moreover, Kutkowski does not cite to any evidence appearing in the record that would indicate the parties intended to trigger the right of first refusal upon Princeville Corporation's intent to sell the master parcel.[6] Indeed, the record supports a contrary conclusion. For example, in seeking the right of first refusal contained in the license agreement, Kutkowski informed Princeville Corporation, "If this property is dividable from the large amount of property Princeville owns, we would be very serious about making a market value offer on this parcel." (Emphasis added). Similarly, in an internal memorandum, Princeville Corporation's representatives memorialized their understanding of the right of first refusal: "The tenant will be provided a first right of refusal in case of subdivision and sale of the property he occupies." (Emphasis added). This evidence indicates the parties intended that the right of first refusal would not be triggered unless and until the master parcel was subdivided and Princeville Corporation intended to make the half-acre parcel available for sale.

Thus, PPGC should not, "by an acceptance of an offer to sell the whole, be compelled by judicial decree to dispose of the optioned part separately from the property as a whole." *See Guaclides,* 170 A.2d at 493. Indeed, the potential unfairness of requiring a land owner to sell the smaller parcel in these circumstances is noted by majority and minority jurisdictions alike. *See, e.g., Wilber Lime Prods., Inc. v. Ahrndt,* 268 Wis.2d 650, 673 N.W.2d 339, 342–43 (Wisc.Ct.App.2003) (noting that attributing a per-acre ratio of the value of the larger parcel to the smaller

parcel "would bear no relation to [the smaller parcel's] worth and the holder of the right of first refusal would have acquired the property at an absurdly low price and on terms never really agreed to between the parties") (citation, internal quotation marks, and brackets omitted); *Chapman,* 800 P.2d at 1151 (noting that the holding that the right of first refusal was not triggered "protects the owner from making a sale he did not desire and from problems and potential inequities which may result from deriving a value for the smaller burdened tract by allocation, either proportionally ... or by some sort of judicial determination of market value"). Perhaps in recognition of these difficulties, the majority opinion does not opine on the terms upon which PPGC must offer to sell the property to Kutkowski, but concludes only that PPGC must do so. Majority opinion at 362, 300 P.3d at 1021. Respectfully, the majority's holding is unlikely to resolve the dispute in the instant case and, in effect, returns the parties to the trial court to argue whether any offer propounded by PPGC complies with the broad standard articulated by the majority opinion.

Accordingly, I respectfully dissent.

---

6. Kutkowski cites only to the following statement in his declaration: "Despite its intention to sell the Property, Princeville [Corporation] did not first offer to sell the Property to me, which Princeville was obligated to do under the Option to Purchase contained in the Agreement." However, this statement does not indicate whether the parties intended, at the time of entering into the license agreement, to trigger the right of first refusal upon Princeville Corporation's intent to sell the master parcel.